IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
*(Electronically Filed)*

| | | |
|---|---|---|
| LETCH G. DAY, STEPHANIE E. FIELDS, STEVEN D. FRASURE, STEPHANIE G. LOGSDON, SONYA A. BURKHART, LESLIE H. FRYMAN, SEAN H. DAVENPORT, and EDWIN BENTLEY on behalf of themselves and all others similarly situated | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 5:17-cv-00183-DCR |
| AIR METHODS CORPORATION d/b/a AIR METHODS OF KENTUCKY, AIR METHODS, AIR IDAHO RESCUE, ARCH AIR MEDICAL SERVICES, BLACK HILLS LIFE FLIGHT, LIFENET, LIFENET SOUTH CAROLINA, MERCY AIR, REACT ROCKFORD MEMORIAL HOSPITAL, WYOMING LIFE FLIGHT, ALABAMA LIFE SAVER, BAYFLITE, SAN ANTONIA AIRLIFE, GUTHRIE AIR, LIFESTART, PORTNEUF AIR RESCUE, NATIVE AIR, MEDFLIGHT, REACTSAINTS FLIGHT, WAKEMED AIR MOBILE, LIFEMED OF ALASKA, UNIVERSITY HOSPITALS MEDEVAC, TRI-STATE CARE FLIGHT, and MEDIFLIGHT OF OKLAHOMA | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| WILLIAM KELLY MILLER and JOSEPH BARKLEY HILL, | ) ) ) ) ) ) | |
| Defendants. | | |

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

Introduction ................................................................................................................... 1

Statement of Facts ......................................................................................................... 3

Argument ....................................................................................................................... 4

    **I.**      **THE LEGAL STANDARDS** ............................................................... 4

           A.  Failure to State a Claim for Which Relief May Be Granted ................... 4
           B.  Personal Jurisdiction ............................................................................. 5

    **II.**     **PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE ADA** .......................................... 5

    **III.**    **THE KWHA DOES NOT PERMIT CLASS ACTION LAWSUITS** ................... 9

    **IV.**    **THE COURT LACKS PERSONAL JURISDICTION OVER AMC REGARDING CLAIMS BY PUTATIVE CLASS MEMBERS WHO ARE/WERE EMPLOYED BY AMC OUTSIDE OF KENTUCKY** ................... 11

           A.  Kentucky's Long-Arm Statute Does Not Reach AMC Entities Employing Employees Outside Kentucky ............................................................ 12
           B.  Exercising Jurisdiction Over AMC Regarding the Out-Of-State Plaintiffs Offends Due Process ............................................................................. 15
           C.  The Court Also Lacks General Jurisdiction Over AMC Entities as to the Claims of the Out-Of-State Plaintiffs ................................................. 16

    **V.**      **PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS** ............................................................. 17

    **VI.**    **PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE KWHA CLAIMS** ................. 18

Conclusion .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adedje v. Westat, Inc.*,
    75 A.3d 401 (Md. App. 2013) .................................................................................. 17

*Allstate Ins. Co. v. Thrifty Rent-A-Car System, Inc.*,
    249 F.3d 450 (6th Cir. 2001) .................................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ...................................................................... 4

*Bolduc v. National Semiconductor Corp.*,
    35 F. Supp. 2d 106 (D. Me. 1998) .......................................................................... 17

*Brunner v. Hampson*,
    441 F.3d 457 (6th Cir. 2006) .................................................................................. 12

*Caesars Riverboat Casino, LLC v. Beach*,
    336 S.W.3d 51 (Ky. 2011) .............................................................................. 12, 13

*Cunningham Charter Corp. v. Learjet, Inc.*,
    592 F.3d 805 (7th Cir. 2010) .................................................................................... 2

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ............................................................................................. 12

*Days Inns Worldwide, Inc. v. Patel*,
    445 F.3d 899 (6th Cir. 2006) .................................................................................... 5

*DiFiore v. American Airlines, Inc.*,
    646 F.3d 81 (1st Cir. 2011) ...................................................................................... 7

*Ellis v. Arrowood Indemnity Co.*,
    2014 WL 2818458 (E.D. Ky. June 23, 2014) ........................................................ 19

*Ginsberg v. Northwest. Inc.*,
    695 F.3d 873 (9th Cir. 2012) .................................................................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................................... 16

*Harper v. AutoAlliance Int'l, Inc.*,
    392 F.3d 195 (6th Cir. 2004) .................................................................................... 2

*Helicopteros Nacionales de Colombia, S.A. V. Hall*,
  466 U.S. 408 (1984) ...................................................................................... 12

*Hinners v. Robey*,
  336 S.W.3d 891 (Ky. 2011)........................................................................... 13

*Ivey v. McCreary County Fiscal Court*,
  939 F. Supp. 2d 762 (E.D. Ky. 2013)............................................................ 17

*Jones v. City of Cincinnati*,
  521 F.3d 555 (6th Cir. 2008)*, cert. denied,* 129 S. Ct. 909 (2009) ............... 4

*Jones v. Sparks*,
  297 S.W.3d 73 (Ky. App. 2009).................................................................... 18

*Kennedy v. Ziesmann*,
  526 F. Supp. 1328 (E.D. Ky. 1981)............................................................... 15

*Kingsley Assoc. v. Moll PlastiCrafters, Inc.*,
  65 F.3d 498 (6th Cir. 1995)........................................................................... 10

*Mass. Delivery Ass'n v. Healey*,
  821 F.3d 187 (1st Cir. 2016)........................................................................... 7

*McCann v. Sullivan University Systems, Inc.*,
  2015 WL 832280 (Ky. Ct. App. Feb. 27, 2015)............................................ 10

*McDonald's Corp. v. Ogborn*,
  309 S.W.3d 274 (Ky. App. 2009).................................................................. 18

*McNutt v. General Motors Acceptance Corp. of Indiana*,
  298 U.S. 178 (1936) ........................................................................................ 5

*Messick v. Toyota Motor Mfg., Inc.*,
  45 F. Supp. 2d 578 (E.D. Ky. 1999).............................................................. 18

*Metz v. Unizan Bank*,
  649 F.3d 492 (6th Cir. 2011) .......................................................................... 2

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .................................................................................... 6, 9

*Northwest v. Ginsberg*,
  134 S. Ct. 1422 (2014) ........................................................................... 7, 8, 9

*Pate v. Huntington Nat'l Bank*,
  2013 WL 557195 (N.D. Ohio Feb. 12, 2013)................................................. 2

iii

*Prestige Casualty Co. v. Michigan Mutual Ins. Co.*,
    99 F.3d 1340 (6th Cir. 1996) ....................................................................10

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) ..............................................................................6, 7

*Schwann v. FedEx Ground Package Sys., Inc.*,
    813 F.3d 429 (1st Cir. 2016).......................................................................7

*Sorey v. Barton Oldsmobile*,
    919 P.2d 1276 (Wash. Ct. App. 1996) .....................................................18

*Southern Mach. Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ....................................................................15

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ..............................................................5, 15

*Toyota Motor Manufacturing Kentucky, Inc. v. Kelley*,
    2013 WL 6046079 (Ky. Ct. App. Nov. 15, 2013) ....................................10

*United Steel v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010) ....................................................................2

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ..................................................................2

*Wellons v. Northwest Airlines, Inc.*,
    165 F.3d 493 (6th Cir. 1999) ......................................................................8

*Williams v. King Bee Delivery, LLC*,
    199 F. Supp. 3d 1175, 1184 (E.D. Ky. 2016) ...........................................11

*Wilson v. Lowe's Home Ctr.*,
    75 S.W.3d 229 (Ky. App. 2001)................................................................18

**<u>Statutes</u>**

28 U.S.C. § 1391 ................................................................................................14

28 U.S.C. §§ 1441, 1453 and 1446................................................................1

29 U.S.C. § 216(b) ............................................................................................10

49 U.S.C. § 41713(b)(1) ..............................................................................2, 6

ADA ...................................................................................................*passim*

Airline Deregulation Act of 1978 ....................................................................2

H.R.S. § 387 ...................................................................................................................... 17

IC § 22-2-2-9 ..................................................................................................................... 17

820 Ill Comp. Stat. § 105/12(a) ........................................................................................ 17

Kentucky Wage and Hour Act, KRS 337.010, *et seq.*........................................................ 1

KRS 337.285(1) ................................................................................................................. 17

KRS Chapter 337 ............................................................................................................... 17

KRS § 337.225(1) ................................................................................................................ 1

KRS § 337.285 ............................................................................................................. 3, 19

KRS § 337.385 ........................................................................................................... 10, 11

KRS § 337.385(2) ................................................................................................................ 9

KRS § 413.120(2) .............................................................................................................. 17

KRS § 454.210 ................................................................................................................... 12

KRS § 454.210(2)(a)(1), (2) .............................................................................................. 13

M.S.A. § 541.07(5) ............................................................................................................ 18

Mich. Comp. Laws Ann. § 408.419 .................................................................................. 17

N.J.S.A § 34:11-56a25.1 ................................................................................................... 18

N.Y. Labor Law § 663(3) .................................................................................................. 18

R.I. Gen. Laws § 28-14-20(b) ........................................................................................... 18

W.Va. Code § 21-5C-8 ...................................................................................................... 18

**<u>Other Authorities</u>**

7 CCR § 1103-1:15 ............................................................................................................ 17

Fourteenth Amendment ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 5, 11

*** *** ***

Defendants, Air Methods Corporation ("AMC"), William Kelly Miller ("Miller") and Joseph Barkley Hill ("Hill") (collectively "Defendants"), by counsel, submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' class action Complaint in its entirety.

## INTRODUCTION

AMC is a national provider of emergency air medical transport to patients with life-threatening injuries and illnesses.  On March 22, 2017, Plaintiffs, Letch G. Day, Stephanie E. Fields, Steven D. Frasure, Stephanie G. Logsdon, Sonya A. Burkhart, Leslie H. Fryman, Sean H. Davenport and Edwin Bentley (collectively "Plaintiffs"), all former employees of AMC, filed this class action lawsuit alleging violations of the Kentucky Wage and Hour Act ("KWHA"), KRS 337.010, *et seq.*, and various other state wage and hour laws, unjust enrichment and retaliation.  On April 20, 2017, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1453 and 1446 and the Class Action Fairness Act ("CAFA").

In their Complaint, Plaintiffs assert AMC failed to pay its employees overtime for all hours worked over forty (40) hours in a week in violation of KRS § 337.225(1).  (Complaint, ¶ 35).  Furthermore, Plaintiffs claim Defendants' pay practices also violated other states' wage and hour laws, including Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin.  (*Id.* at ¶ 41).  Accordingly, Plaintiffs seek class representation for all similarly situated employees performing work in Kentucky and these additional sixteen (16) states.  (*Id.* at ¶¶ 31, 32).  Defendants' alleged wage and hour violations also serve as the basis for Plaintiffs' unjust enrichment claims.  (*Id.* at ¶ 46).  Finally, the named Plaintiffs allege Defendants retaliated against and/or wrongfully terminated them for complaining about

1

Defendants' purported illegal pay practices.   (*Id.* at ¶¶ 77, 78).

As more fully discussed below, Plaintiffs' claims should be dismissed because they are preempted by the Airline Deregulation Act of 1978 ("ADA").   The ADA provides that states may not enact or enforce a law relating to the price, route or service of an air carrier.  49 U.S.C. § 41713(b)(1).   Plaintiffs' claims, which involve the application of numerous, varying state statutory and common laws, relate to the prices, routes or services of AMC (an air carrier) and, thus, interfere with the ADA's deregulatory mandate.  If the Court finds that Plaintiffs' claims are not preempted by the ADA, however, alternative reasons exist to dismiss a majority of Plaintiffs' claims.

All of Plaintiffs' claims brought in a representative capacity must be dismissed.  First, the KWHA does not permit class action lawsuits.  Moreover, this Court lacks personal jurisdiction over AMC, a non-resident defendant, regarding any claims brought by its employees who are/were employed outside of Kentucky, as their claims do not arise from AMC's contacts with Kentucky.[1]

Plaintiffs' claims are also barred by the applicable statute of limitations.   KWHA violations are subject to a five-year limitations period.  As such, the claims of Plaintiffs Logsdon, Fryman and Davenport must be dismissed in their entirety, as their employment with AMC ended in 2010, 2009 and 2008, respectively.  Additionally, since Plaintiffs seek to represent class members who were employed by AMC dating back to January 1, 2007, any alleged unpaid overtime wages due prior to March 22, 2012 are likewise time-barred.

---

[1] A determination of whether this Court has subject matter jurisdiction is made at the time the notice of removal is filed.   *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210-11 (6th Cir. 2004).   Accordingly, dismissal of the representative claims does not divest this Court of jurisdiction pursuant to CAFA.  *See Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011) ("denial of class certification does not divest federal courts of jurisdiction").  *See also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009);  *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1091 (9th Cir. 2010); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010); *Pate v. Huntington Nat'l Bank*, 2013 WL 557195, at *2 (N.D. Ohio Feb. 12, 2013).

The Court should likewise dismiss Plaintiffs' unjust enrichment claims because they are preempted by the KWHA.  Both claims arise from the same set of facts and circumstances. Moreover, the same alleged behavior of Defendants—the failure to pay overtime wages pursuant to KRS § 337.285—is the basis for both Plaintiffs' KWHA claims and their unjust enrichment claims.

## STATEMENT OF FACTS

AMC operates an air medical emergency transport service providing services in forty-eight (48) states.  AMC conducts business throughout the country under various assumed names (or d/b/a's), including Air Methods of Kentucky, Air Idaho Rescue, Arch Air Medical Service, Black Hills Life Flight, LifeNet South Carolina, React, Wyoming Life Flight, Alabama Life Saver, Bayflite, San Antonio AirLife, Guthrie Air, LifeStar, Portneuf Air Rescue, MedFlight, Saints Flight, WakeMed Air Mobile, LifeMed of Alaska, MedEvac, and Mediflight of Oklahoma.[2]  (Affidavit of J. Losinger, ¶¶ 3-21, attached as Exhibit 1).  Other than Air Methods of Kentucky, these d/b/a's do not operate in or serve Kentucky, have no business locations in Kentucky and do not employ any employees in Kentucky.  (*Id.* at ¶ 22).  They do not own or lease any real property in Kentucky and have no bank accounts in Kentucky.  (*Id.*).

AMC is in the business of providing rapid response emergency transport services to save lives.  As such, a key component of its service is the speed of its response.  Importantly, flight crew members (flight nurses and flight paramedics) work 24-hour shifts and are required to stay on base near the helicopter in order to swiftly gear up and respond to emergency calls.  However, they are permitted to sleep during their 24-hour shifts if they are not responding to an emergency

---

[2] Although named in the Complaint as d/b/a's of AMC, the following are not d/b/a's of AMC, but rather are separate corporate entities:  Mercy Air Service, Inc., LifeNet, Inc., Native Air Services, Inc. and Tri-State Care Flight, L.L.C. (Affidavit of J. Losinger, ¶ 2).  They have not been properly named or served and, therefore, are not parties to the action.

call.

All the named Plaintiffs were previously employed by AMC d/b/a Air Methods of Kentucky in Kentucky.  Their dates of employment were as follows:

- Letch Day, Flight Paramedic, May 28, 2008 to February 23, 2017.

- Stephanie Fields, Flight Nurse, 2009 to March 2013.

- Steven Frasure, Flight Paramedic, 2007 to 2014.

- Stephanie Logsdon, Flight Nurse, 2005 to 2010.

- Sonya Burkhart, Flight Nurse, February 2004 to December 2014 and 2016 to February 23, 2017.

- Leslie Fryman, Flight Paramedic, 2001 to 2009.

- Sean Davenport, Flight Paramedic, 2003 to 2008.

- Edwin Bentley, Flight Paramedic and Base Manager, 2003 to 2014.

(*Id.* ¶¶ 17- 24).

## ARGUMENT

### I.      THE LEGAL STANDARDS.

#### A.      Failure to State a Claim for Which Relief May Be Granted.

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)*, cert. denied,* 129 S. Ct. 909 (2009).  Even applying this standard, Defendants are entitled to dismissal of several of Plaintiffs' claims.

**B.      Personal Jurisdiction.**

In order for a court to hear a legal dispute, it must have jurisdiction over the defendant. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006).  Pursuant to Federal Rule 12(b)(2), a defendant may challenge a court's exercise of personal jurisdiction by a motion to dismiss.  Fed. R. Civ. P. 12(b)(2).  If the defendant supports its motion to dismiss with affidavits, the plaintiff must also respond with affidavits or other written evidence and may not rest on the pleadings alone.  *Id.*   ("[P]laintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."); *see also McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) ("If his allegations of jurisdictional facts are challenged by his adversary in any appropriate matter, [plaintiff] must support them by competent proof.").  As the party seeking the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that such jurisdiction exists.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  When ruling on a motion to dismiss based on written submissions alone, the district court must consider the pleadings and affidavits in a light most favorable to the plaintiff.  *Id.* at 1458-59.

## II.      PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE ADA.

In an effort to deregulate the airline industry, Congress enacted the ADA in 1978. In order to fulfill its deregulatory purpose, the ADA deregulates air carriers by expressly preempting state laws. The ADA provides, "no State or political subdivision thereof . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority to provide air

transportation."  49 U.S.C. § 41713(b)(1).[3]  In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), the Supreme Court explained that the ADA's key phrase "relating to" broadly means to "stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."  *Id.* at 383.  The Court emphasized that the ADA's preemption provision expresses a broad preemptive purpose, has an "expansive sweep," is "deliberately expansive" and is "conspicuous for its breadth."  *Id.* at 383-84.  Thus, the Court explained that ADA preemption is not limited to laws that actually *prescribe* rates, routes or services.  *Id.* at 385.  "This simply reads the words "related to" out of the statute. Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to 'regulate rates, routes, and services.'"  *Id.*

The Court in *Morales* also noted that the Senate rejected a version of the ADA that preempted laws "determining" routes, schedules, or rates.  *Id.* at 385, n.2.  Instead, the full Congress preferred the term "related to" over "determining."  *Id.*  The Court explained: "[n]ext, petitioner advances the notion that only state laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability. Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the 'related to' language."  *Id* at 386.  Accordingly, the Court stated that it has "consistently rejected" such attempts to restrict the preemptive effect of the "related to" language in the ADA.  *Id.*  Preemption is not unlimited, however, and state laws that only impact air carriers in a "tenuous, remote or peripheral … manner" may not be preempted.  *Rowe v. N.H. Motor Transp. Ass'n*, 552

---

[3] The United States Department of Transportation, Federal Aviation Administration has certified AMC is an "air carrier" under the Federal Aviation Act of 1958 (FAA).  A copy of AMC's Air Carrier Certificate is attached as Exhibit 2.

U.S. 364, 370-71 (2008).

Preemption turns not on the type of law, but whether the claim being advanced under the law affects prices, routes or services. *See, e.g., Northwest v. Ginsberg,* 134 S. Ct. 1422, 1429 (2014) (rejecting the argument that Congress did not intend to preempt common law claims). Similarly, there is no "wage law" exception to the ADA.  No matter how traditional the claims are of state law, a claim is still preempted by the ADA if it is "related to" rates, routes or services. *Rowe,* 553 U.S. at 370; *see, e.g., DiFiore v. American Airlines, Inc.,* 646 F.3d 81, 88 (1st Cir. 2011) (tip law wage claim preempted by ADA).  *See also Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 437-40 (1st Cir. 2016) (holding that requirement under Massachusetts Independent Contractor Statute, that service be performed outside the usual course of employer's business, sufficiently related to carrier's service and routes, and, thus, was preempted by the Federal Aviation Administration Authorization Act); *Mass. Delivery Ass'n v. Healey*, 821 F.3d 187, 193 (1st Cir. 2016) (same).

*Ginsberg* is instructive and reaffirms the Supreme Court's teachings regarding the broad scope of ADA preemption.  In the district court's decision in *Ginsberg*, it held that the ADA preempted a claim that an airline violated its duty of good faith and fair dealing.  In reversing the district court's decision, the Ninth Circuit held that a claim for breach of the implied covenant is "too tenuously connected to airline regulation to trigger" ADA preemption because it does not interfere with the ADA's "deregulatory mandate." *Ginsberg v. Northwest. Inc.*, 695 F.3d 873, 879-880 (9th Cir. 2012) (overturned). The Ninth Circuit further found that the claim was not preempted "because it does not have a 'direct effect' on either 'prices' or 'services.'" *Ginsberg*, 134 S. Ct. at 1428.

The Supreme Court reversed and remanded. The Court first held that the ADA preempts

7

not only statutes and regulations, but also state common-law rules that have the force and effect of law. The Court held that "[w]hat is important ... is the effect of a state law, regulation or provision, not its form, and the ADA' s regulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation." *Ginsberg*, 134 S. Ct. at 1430.

*Ginsberg* finally put to rest the idea that a law of general applicability is excepted from the ADA preemption analysis. Certainly a common law claim for the breach of implied covenant of good faith and fair dealing would be viewed a law of general applicability. Importantly, however, the Court in *Ginsberg* had no problem finding such a cause of action preempted even without requiring the airline to make an evidentiary showing of significant economic impact. Instead, the airline only had to show that the plaintiffs claim had "a connection with" rates, routes or services.[4]

Given the broad scope of ADA preemption, Plaintiffs' claims for violations of various state wage and hour laws are preempted. Decisions relating to the payment of wages to an air carrier's employees are clearly "related to" the company's rates, routes or services. AMC's employees are the ones who provide services to its customers, and when and how crew members sleep has a direct impact on the services AMC provides and how it provides them. Moreover, the cost of labor clearly impacts how many employees AMC is able to employ, and, thus, the services it is able to provide. These decisions, in turn, also affect the rates charged for AMC's services. Furthermore, subjecting AMC to the varying wage and hour laws of multiple states would establish inconsistent regulatory standards and requirements – all in direct contravention

---

[4] The Sixth Circuit has not addressed the question of whether ADA preempts state wage and hour laws. It has determined that the ADA does not preempt state laws against racial discrimination. *Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493 (6th Cir. 1999). *Wellons* is clearly distinguishable, as the Court found the racial anti-discrimination laws did not relate to the air carrier's ability to render service safely and efficiently (as opposed to discrimination based on physical characteristics). Here, regulation of sleep time and overall labor costs and their effect on AMC's employment of flight nurses and flight paramedics would affect AMC's ability to render appropriate service to its customers.

of the congressional policy and the deregulatory intent of the ADA.  *See Morales*, 504 U.S. at 378-79 (noting that, by promulgating the ADA, Congress intended to promote economic efficiency, innovation and low consumer prices by primarily relying upon competitive market forces rather than governmental regulation of the commercial airline business; any governmental regulation of the industry should be federal, and the ADA preemption clause was designed to prevent the states from undoing federal deregulation by substituting state regulation). Accordingly, Plaintiffs' wage and hour causes of action are preempted by the ADA.

Moreover, Plaintiffs' claims for unjust enrichment and retaliation are likewise preempted. Plaintiffs' unjust enrichment claims involve the same set of facts and legal arguments, namely that Defendants' failure to pay overtime wages in violation of state laws conferred a benefit upon Defendants at Plaintiffs' expense.  Furthermore, Plaintiffs' retaliation claims are based upon Plaintiffs' alleged complaints relating to Defendants' purported violations of state wage and hour laws. *See Ginsberg*, 134 S. Ct. at 1430.  Accordingly, all of Plaintiffs' claims are preempted by the ADA and must be dismissed in their entirety.

### III.    THE KWHA DOES NOT PERMIT CLASS ACTION LAWSUITS.

Plaintiffs allege, on behalf of themselves and other similarly situated AMC employees, that AMC failed to pay overtime for all hours worked over forty hours in a week in violation of the KWHA.  The plain language of KRS § 337.385(2), however, does not authorize class action lawsuits for Kentucky wage and hour violations.  The statute states, in relevant part, that actions for KWHA violations may only be maintained by "one (1) or more employees for and in behalf of himself, herself, or themselves."  KRS § 337.385(2).  This language directly contrasts with the language of the Fair Labor Standards Act ("FLSA"), which expressly allows plaintiffs to bring claims for wage and hour violations "on behalf of himself or themselves ***or other employees***

*similarly situated*." 29 U.S.C. § 216(b) (emphasis added).

In a February 27, 2015 decision by the Kentucky Court of Appeals, *McCann v. Sullivan University Systems, Inc.*, 2015 WL 832280 (Ky. Ct. App. Feb. 27, 2015), the court found that KRS § 337.385 – the same provision under which Plaintiffs bring their unpaid overtime claims – does not support class-action claims. (A copy of the *McCann* opinion is attached as Exhibit 3). *See also Toyota Motor Manufacturing Kentucky, Inc. v. Kelley*, 2013 WL 6046079 (Ky. Ct. App. Nov. 15, 2013) (while the court ultimately did not reach the issue of class action relief under KRS § 337.385, it stated that if the court were to reach the issue, it would hold that KRS § 337.385 "does not permit class actions."). On October 21, 2015, the Kentucky Supreme Court granted the plaintiffs' motion for discretionary review in *McCann*. The Court heard arguments in the matter in June 2016, but a decision has yet to be rendered.

When applying state law, a federal court must abide by the controlling decisions of that state's highest court. *Allstate Ins. Co. v. Thrifty Rent-A-Car System, Inc.*, 249 F.3d 450, 453-54 (6th Cir. 2001). If the issue has not yet been addressed by the state's highest court, the federal court "must predict how that court would rule, by looking to 'all available data.'" *Prestige Casualty Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state supreme court] would decide otherwise." *Kingsley Assoc.*, 65 F.3d at 507.

Here there is no "persuasive data" indicating the Kentucky Supreme Court will decide the issue any differently than the appellate court in *McCann*. The statutory language is clear and does not provide an avenue for class action relief. Indeed, this Court has noted:

> The final clause in KRS 337.385(2) … identifies who can sue under the statute. A natural reading of the sentence is:
>
> (1) any one employee may maintain an action for and in behalf of himself;
>
> (2) any one employee may maintain an action for and in behalf of herself; or
>
> (3) any two or more employees may maintain an action for and in behalf of themselves.
>
> None of these three readings supports Plaintiffs' position that employees may sue *for and in behalf of other employees similarly situated*. … [T]he plain language of the statute does not allow for a lawsuit in a representative capacity. Absent other Kentucky authority, this Court believes that Kentucky courts are likely to follow the plain language of the statute.

*Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1184 (E.D. Ky. 2016) (quoting *Green v. Platinum Restaurants Mid-America LLC*, 2015 WL 6454856 (W.D. Ky. Oct. 26, 2015)).

Furthermore, although the KWHA was modeled after the FLSA, the Kentucky legislature specifically excluded the words "and other employees similarly situated," which appear in the FLSA section authorizing causes of action. *Id.* at 1185 (citing 29 U.S.C. § 216(b)). Moreover, the legislature has amended KRS § 337.385 three time since its enactment, but has failed to add language allowing class actions. *Id.* Accordingly, there is no reason to believe the Kentucky Supreme Court will not affirm the appellate court's holding that KRS § 337.385 does not permit class action lawsuits pursuant to the KWHA, and Defendants' motion to dismiss Plaintiffs' KRS § 337.385 representative claims must be granted.

### IV. THIS COURT LACKS PERSONAL JURISDICTION OVER AMC REGARDING CLAIMS BY PUTATIVE CLASS MEMBERS WHO ARE/WERE EMPLOYED BY AMC OUTSIDE OF KENTUCKY.

Pursuant to Fed. R. Civ. P. 12(b)(2), this Court lacks personal jurisdiction over AMC, a

non-resident defendant, regarding all claims of putative class members who are/were employed by AMC outside of Kentucky (i.e., those employed by AMC in Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin (Complaint, ¶¶ 31, 32)).[5] There are two ways in which a Kentucky court may exercise jurisdiction over a nonresident corporation: specific or general jurisdiction.  Specific jurisdiction, typically known as long-arm jurisdiction, requires the plaintiff's cause of action arise out of the defendant's contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. V. Hall*, 466 U.S. 408, 414 n.8 (1984).  On the other hand, general jurisdiction arises when the defendant's contacts with the forum state are so continuous and systematic as to render it essentially at home in that state.  If general jurisdiction exists, a court may exercise jurisdiction over a defendant regardless of whether the cause of action arises from the defendant's contacts with the forum state.

> ### A.   Kentucky's Long-Arm Statute Does Not Reach AMC Entities Employing Employees Outside Kentucky.

In order to exercise specific personal jurisdiction over AMC in regards to claims of non-Kentucky employees, this Court must first be authorized by Kentucky's long-arm statute, and, if so, its exercise of jurisdiction must also comport with the Due Process Clause of the Fourteenth Amendment.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014); *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).  A two-prong test must be met in order to exercise jurisdiction under Kentucky's long-arm statute.  *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).  First, the non-resident's conduct or activities must fall within one of the nine enumerated subsections in Kentucky's long-arm statute, KRS § 454.210.  Second, the plaintiff's claims must ***arise from*** the non-resident's actions.  The "arising from" prong of Kentucky's test

---

[5] In paragraph 14 of Plaintiffs' Complaint, Plaintiffs also reference the California Labor Code.  Thus, it is unclear if Plaintiffs are additionally seeking to represent flight nurses and flight paramedics employed by AMC in California.

for specific personal jurisdiction requires proof of a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" *Id.* at 59.  Plaintiffs, as the party asserting a claim against the non-resident defendant, must prove that there is a sufficient causal link between their claims and the non-resident's alleged contacts with Kentucky.  *Id.*

Here, AMC acknowledges the activities of Air Methods of Kentucky fall within those listed in Kentucky's long-arm statute.  *See* KRS § 454.210(2)(a)(1), (2) ("[t]ransacting any business" or "[c]ontracting to supply services or goods" in Kentucky).  AMC provides air medical emergency transport services throughout the state and employs several employees in the state to carry out its business, and the Kentucky Plaintiffs' claims arise from those contacts.  The same is not true for AMC entities which conduct business in other states as to the claims of the out-of-state Plaintiffs.

In *Caesars Riverboat Casino*, 336 S.W.3d at 58–59, the Kentucky Supreme Court held that a slip-and-fall accident in an Indiana casino could not reasonably be construed as "arising from" the casino's "transacting business" in Kentucky, when the casino's contacts consisted of advertising, conducting promotional campaigns and sponsoring civic events in Kentucky.  *See also Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011).  Rather, the connection between the premises liability claim and the casino's business activity in Kentucky was "far too attenuated" to establish personal jurisdiction over the casino.  *Id.*  Consequently, the Court dismissed the claims against the casino because there was "no reasonable and direct nexus" between the casino's business activity in Kentucky and its alleged negligent acts in Indiana that contributed to the plaintiff's injuries.  *Caesars Riverboat Casino*, 336 S.W.3d at 59.

Any putative class members who are/were employed by AMC outside of Kentucky

through one of the out-of-state d/b/a's would face similar problems here. Because their claims against AMC, a non-resident corporation, arise from their employment with AMC in other states and do not "arise from" AMC's contacts with Kentucky, those claims should be dismissed for lack of personal jurisdiction. Plaintiffs try to sidestep this jurisdictional prerequisite by alleging that the Court has personal jurisdiction over AMC because it "has physical work locations" throughout Kentucky, "provides air medical services in every county of Kentucky, including Fayette County, Kentucky," and "conducts business operations within Fayette County, Kentucky." (Complaint, ¶¶ 4, 5). Despite this, the d/b/a's listed in Plaintiff's Complaint, with the exception of Air Methods of Kentucky, do not operate in or serve Kentucky, have no business locations in Kentucky and do not employ any employees in Kentucky. Additionally, they do not own or lease any real property in Kentucky and have no back accounts in Kentucky. (Affidavit of J. Losinger, ¶ 22).

The putative class members who are/were not Kentucky employees must establish that their employment-related claims "arise from" AMC's activities in Kentucky. This they cannot do. Their claims against AMC for violations of other states' wage and hour laws do not "arise from" AMC's business contacts in Kentucky. Plaintiffs do not allege that any of the non-Kentucky employees' claims against AMC arise out of any contact that AMC had with Kentucky. Indeed, their claims against AMC arise solely out of work performed outside of Kentucky in other states. Accordingly, the Court should dismiss all claims of the putative class members who are/were not employed by AMC in Kentucky.[6]

---

[6] Even if the Court has personal jurisdiction over the claims of the absent class members, venue is not proper in this Court as to such claims. *See* 28 U.S.C. § 1391.

**B.      Exercising Jurisdiction Over AMC Regarding the Out-Of-State Plaintiffs Offends Due Process.**

Because Kentucky's long-arm statute does not confer jurisdiction over AMC regarding claims by putative class members who are/were not employed by AMC in Kentucky, it is unnecessary to reach the second step of the analysis.  But, even if Plaintiffs could scale the hurdle of Kentucky's long-arm statute, their claims must be dismissed because exercising personal jurisdiction over AMC in these circumstances offends its Due Process rights.

"The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'"  *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citations omitted).  The Sixth Circuit relies on three criteria to decide whether personal jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  Thus, under both Kentucky's long-arm statute and due process considerations, it is required that the claims against AMC "arise from" AMC's contacts with Kentucky.  As previously established, AMC's only contacts with Kentucky arise out of AMC's business-related connections with its Kentucky employees.  Putative class members who are/were not employed in Kentucky cannot, however, establish that their alleged employment-related injuries "arose from" these same contacts.  *See*, *e.g.*, *Kennedy v. Ziesmann*, 526 F. Supp. 1328 (E.D. Ky. 1981) (Covington, Kentucky court lacked personal jurisdiction over a physician who treated the plaintiff in the neighboring city of

Cincinnati, Ohio).  Because there is no nexus between AMC's business in Kentucky and the alleged wage and hour claims of putative class members who are/were not employed in Kentucky, this Court lacks personal jurisdiction over AMC regarding the claims of the putative out-of-state class members, and those claims against AMC must be dismissed.

### C.    The Court Also Lacks General Jurisdiction Over AMC Entities as to the Claims of the Out-Of-State Plaintiffs.

Separately, AMC's business transactions in Kentucky are insufficient to establish general jurisdiction over AMC regarding the alleged claims by putative class members who are/were not employed by AMC in Kentucky.  As an initial matter, Kentucky's long-arm statute does not provide for general jurisdiction.  But even if it did, a court may only assert general jurisdiction over an out-of-state corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction is permissible only in a state in "which the corporation is *fairly regarded as at home*." *Id.* (emphasis added).  A corporation's state of incorporation and principal place of business are the "paradigm" locations where a corporation is "at home." *Id.* at 2853–54.

AMC is a Delaware corporation with its principal place of business in Colorado.  As established above, although AMC provides air medical emergency transport services throughout Kentucky and employs several employees in Kentucky,  AMC's services provided in Kentucky are not germane to the general jurisdiction analysis.  AMC's headquarters and central business operations are located in Colorado.  Accordingly, AMC is not "essentially at home" in Kentucky.  Kentucky, therefore, does not have general jurisdiction over AMC, further supporting the dismissal of the claims of putative class members who are/were not employed by AMC in Kentucky.

## V.   PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

In their Complaint, Plaintiffs claim they are entitled to unpaid overtime compensation dating back to January 1, 2007.  (*See* Complaint, ¶ 13 (indicating putative class members include employees who are or were employed by Defendants as Flight Paramedics and Flight Nurses between January 1, 2007 and the time of trial)).  KRS § 413.120(2) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability."  Because KRS Chapter 337 does not specify a separate statute of limitations for wage and hour claims, Plaintiffs' claims for violations of overtime requirements pursuant to KRS 337.285(1) are subject to a five-year statute of limitations.  *See Ivey v. McCreary County Fiscal Court*, 939 F. Supp. 2d 762, 769 (E.D. Ky. 2013) (citing *Commonwealth v. Hasken*, 265 S.W.3d 215 (Ky. App. 2007)).   The five-year statute of limitations restricts Plaintiffs' recovery to wages allegedly due on or after March 22, 2012 (five years from the date Plaintiffs filed their Complaint).  Because Plaintiffs Logsdon, Fryman and Davenport were not employed by Defendants on March 22, 2012, nor anytime thereafter, their wage and hour and retaliation claims must be dismissed as time-barred.  (*See* Complaint, ¶¶ 20, 22, 23, 69-72).   Furthermore, any claims by Plaintiffs Day, Fields, Frasure, Burkhart, and Bentley or putative class members for alleged unpaid overtime wages due before March 22, 2012 are likewise time-barred.[7]

---

[7] If the Court does not dismiss the claims of those putative class members who are/were employed by AMC outside of Kentucky, their claims for alleged unpaid overtime wages would likewise be time-barred by the applicable states' statute of limitations.  *See* 7 CCR § 1103-1:15 (Colorado has two year statute of limitations or three years for willful violations); H.R.S. § 387 (Hawaii has no statute of limitations in the applicable statues, so federal limitations period of two years or three years for willful violations apply); IC § 22-2-9 (Indiana has three year statute of limitations); 820 Ill Comp. Stat. § 105/12(a) (Illinois has three year statute of limitations); *Bolduc v. National Semiconductor Corp.*, 35 F. Supp. 2d 106, 118 (D. Me. 1998) (Maine has six year statute of limitations); *Adedje v. Westat, Inc.*, 75 A.3d 401 (Md. App. 2013) (Maryland has three year statute of limitations); Mich. Comp. Laws Ann. § 408.419

## VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THEIR KWHA CLAIMS.

Plaintiffs' unjust enrichment claims must be dismissed because they are preempted by their KWHA claims.  In order to establish a claim for unjust enrichment, Plaintiffs must prove the following three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."  *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009).

In *Gryzb v. Evans*, the Kentucky Supreme Court held, "[w]here [a] statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute."  700 S.W.2d 399, 401 (Ky. 1985).  *See also Messick v. Toyota Motor Mfg., Inc.*, 45 F. Supp. 2d 578 (E.D. Ky. 1999); *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229 (Ky. App. 2001).  The plaintiff in *Gryzb* brought both employment discrimination claims under the Kentucky Civil Rights Act ("KCRA") and also common law wrongful discharge claims.  *See id.* at 400.  The *Gryzb* Court explained that the KCRA not only set forth the unlawful employment discrimination act, but that it also structured the remedy.  *Id.* at 401.  Accordingly, the common law wrongful discharge claim was preempted.

The Kentucky Supreme Court also applied *Gryzb* in *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 286 (Ky. App. 2009).  In *Ogborn*, the Court allowed a plaintiff to recover on her claims for premises liability, negligence and false imprisonment because proving the elements of those common law causes of action bore no resemblance to the claims embraced by the KCRA. *Id.*  The *Ogborn* Court was careful to point out, however, that if the plaintiff had continued with

---

(Michigan has three year statute of limitations); M.S.A. § 541.07(5) (Minnesota has two year statute of limitations or 3 years for willful violations); N.C.G.S.A. § 95-25.22(f) (North Carolina has two year statute of limitations); N.J.S.A § 34:11-56a25.1 (New Jersey has two year statute of limitations); N.Y. Labor Law § 663(3) (New York has six year statute of limitations); R.I. Gen. Laws § 28-14-20(b) (Rhode Island has three year statute of limitations); *Sorey v. Barton Oldsmobile*, 919 P.2d 1276 (Wash. Ct. App. 1996) (Washington has three year statute of limitations); W.Va. Code § 21-5C-8 (West Virginia has two year statute of limitations); W.S.A. § (Wisconsin has two year statute of limitations).

her claim for intentional infliction of emotional distress ("IIED"), it would have been subsumed by her KCRA claims because the same purpose and elements were embraced by both the KCRA claims and an action for IIED.  The Court reasoned that because her common law claims were *not* substantially similar to claims authorized by the KCRA, they were not subsumed by the KCRA.  *Id.*  The opposite holds true in this case.

As would be the case with a claim for IIED and KCRA violations, the Plaintiffs' attempted claim for unjust enrichment is duplicative of their claim under the KWHA.  Both claims arise from and allege the same facts and circumstances.  The same alleged behavior of Defendants—the failure to pay overtime wages pursuant to KRS § 337.285—is the basis for both Plaintiffs' KWHA claims and their unjust enrichment claims.  Because the same set of facts underpin both the KWHA and the unjust enrichment claims, and the purpose of the KWHA and the unjust enrichment claims are the same, Plaintiffs' cause of action for unjust enrichment is preempted by their KWHA claims and must be dismissed.

Finally, even if the Court does not dismiss Plaintiffs' unjust enrichment claims, they, too, would be subject to a five-year statute of limitations and any claim for alleged unpaid wages before March 22, 2012 must be dismissed.  *See Ellis v. Arrowood Indemnity Co.*, 2014 WL 2818458, at *7 (E.D. Ky. June 23, 2014) (citing multiple decisions identifying KRS § 413.120(1) "as the appropriate statute of limitations for unjust enrichment claims.").

## CONCLUSION

For the foregoing reasons, Defendants, Air Methods Corporation, William Kelly Miller and Joseph Barkley Hill, respectfully request the Court grant Defendant's Motion to Dismiss and dismiss with prejudice Plaintiffs' claims in their entirety.

Respectfully submitted,


*/s/ Cynthia Blevins Doll*
Cynthia Blevins Doll
Megan R. U'Sellis
FISHER & PHILLIPS LLP
220 West Main Street, Suite 1700
Louisville, Kentucky 40202
Telephone:  (502) 561-3990
Facsimile:  (502) 561-3991
E-Mail:  cdoll@fisherphillips.com
            musellis@fisherphillips.com

COUNSEL FOR DEFENDANTS,
AIR METHODS CORPORATION, et. al.

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of April, 2017, a true and correct copy of the foregoing *Memorandum In Support of Motion to Dismiss* was electronically filed using the Court's electronic filing system and served, via the Court's electronic filing system, upon the following counsel of record:

Charles W. Arnold, Esq.
Christopher D. Miller, Esq.
ARNOLD & MILLER, PLC
401 West Main Street, Suite 303
Lexington, KY  40507
Telephone:  (859) 381-9999
Facsimile: (859) 389-6666
E-Mail:  carnold@arnoldmillerlaw.com
E-Mail:  cmiller@arnoldmillerlaw.com

COUNSEL FOR PLAINTIFFS

and

J. Robert Cowan, Esq.
COWAN LAW OFFICE, PLC
2401 Regency Road, Suite 300
Lexington, KY  40503
Telephone:  (859) 523-8883
Facsimile:  (859) 523-8885
E-Mail:  kylaw@cowanlawky.com

CO-COUNSEL FOR PLAINTIFFS

*/s/ Cynthia Blevins Doll*
COUNSEL FOR DEFENDANTS