UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LETCH G. DAY, et al., | ) |
| Plaintiffs, | ) Civil Action No. 5: 17-183-DCR |
| V. | ) |
| AIR METHODS CORP., et al., | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendants' motion to dismiss the plaintiffs' Complaint pursuant to Rules 12(b)(2), and (6) of the Federal Rules of Civil Procedure. [Record No. 4] For the reasons that follow, the Court will grant, in part, and deny, in part, defendants' motion to dismiss.

**I.**

Plaintiffs Letch G. Day, Stephanie E. Fields, Steven D. Frasure, Stephanie G. Logsdon, Sonya A. Burkhart, Leslie H. Fryman, Sean H. Davenport, and Edwin Bentley are former employees of Defendant Air Method Corporation. The plaintiffs purportedly filed this lawsuit on behalf of themselves and other similarly-situated employees who are or were employed by AMC. They allege violations of the Kentucky Wage and Hour Act ("KWHA"), KRS 337.010, *et seq.*, and various other state wage and hour laws. Additionally, the plaintiffs assert claims of unjust enrichment and retaliation. [Record No. 1-1, p. 4] This action was removed to this Court pursuant to 28 U.S.C §§ 1441, 1453, 1466 and the Class Action Fairness Act ("CAFA"). [Record No. 1]

The plaintiffs assert that AMC failed to pay its employees overtime for all hours worked over forty hours in a week in violation of KRS § 377.285(1). [Record No. 1-1, ¶ 35] They also allege on behalf of similarly-situated current and former employees that AMC failed to pay overtime in violation of various state wage and hour laws. [*Id*. at ¶¶ 41-42] The plaintiffs contend that the failure to pay them required compensation unjustly enriched AMC. Finally, the plaintiffs' assert that AMC retaliated against them by terminating their employment after they made various complaints regarding wage issues in violation of KRS § 377.990(9). [*Id*. at ¶¶ 48-79]

## II.

The plaintiffs have the burden of establishing personal jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). The plaintiffs must make a two-part prima facie showing to survive a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. First, they must demonstrate that "jurisdiction is proper under a long-arm statute or other jurisdictional rule of . . . the forum state". Second, they must show that "the Due Process Clause also allows for jurisdiction under the facts of the case." *Id.* If either part of the test is not met, the analysis ends. *See id.* at 711-12 ("[I]f jurisdiction is not proper under the Due Process Clause[,] it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa."). However, the prima facie burden is "'relatively slight.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1989)). In determining whether a plaintiff has made this necessary showing, the Court views the parties' submissions "in a light most favorable to the

plaintiff," disregarding any contrary assertions by the defendant. *Id.* (citing *Theunissen v.Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

Next, in considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint states a claim for which relief is available. It "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a complaint need not contain detailed factual allegations, it must contain more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.

### A.   Personal Jurisdiction

Specific jurisdiction "depends on an 'affiliation[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop tires Operations, S.A. v.* Brown, 564 U.S. 915, 919 (2011) (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966). AMC contends that this Court does not have personal jurisdiction over it regarding all claims brought in a representative capacity of similarly-situated employees employed by the defendant outside of

Kentucky.  This argument is misplaced because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members.[1]  AMC fails to cite any authority that would support the assertion that its contacts with the named plaintiff and this forum are insufficient to for this Court to exercise specific personal jurisdiction over them.  Instead, this court may exercise personal jurisdiction over AMC if such jurisdiction is authorized by Kentucky law and otherwise consistent with the Due Process Clause of the Fourteenth Amendment.  *See AlixPartners LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).  AMC does not contend that personal jurisdiction would be improper over the claims brought by the named plaintiffs in this case.  As a result, the Court will deny AMC's motion to dismiss for lack of personal jurisdiction.

### B.     The KWHA and Class Actions

AMC contends that KRS § 337.385(2) does not authorize class actions for Kentucky wage and hour violations.  In support, it relies on a 2015 Kentucky Court of Appeals decision which was recently reversed by the Supreme Court of Kentucky.  *McCann v. Sullivan University Systems, Inc.*, No. 2014-CA-392, 2015 WL 832280 (Ky. Ct. App. Feb. 27, 2015),

---

[1] *Cf. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 137 S.Ct. 1773, 1789 n.4 (Sotomayor, J., dissenting) (Justice Sonia Sotomayor recognizing that the majority did not address whether the opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."); *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) (Nonnamed class members … may be parties for some purposes and not for others.  The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."); *see Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-564, 2017 WL 4224723, at *5 (N.D. Cal. September 22, 2017); *see also* Wood, *Adjudicatory Jurisdiction and Class Actions* 62 IND. L. J. 597, 616-617 (1987).

rev'd, --- S.W.3d ----, 2017 WL 3631704 (Ky. Aug. 24, 2017). The supreme court found that "[t[he General Assembly did not create a special statutory proceeding brought under KRS 337.385. Therefore, we hold, as a matter of law, that CR 23 remains an available procedural mechanism to McCann's cause of action brought under KRS 337.385." *McCann*, 2017 WL 3631704, at *4. Because Kentucky's highest has held that KRS §337.385 authorizes class actions, AMC's motion to dismiss on this ground will be denied.

### C.   Airline Deregulation Act Preemption

Congress passed the Airline Deregulation Act ("ADA") in 1978 "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services." Pub. L. No. 95-504, 92 Stat. 1705 (1978). "To ensure that the States would not undue federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992), the ADA contains an express preemption clause which provides:

> [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect *related to a price, route, or service of an air carrier* that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). This clause applies not only to state statutes but also to state common-law claims. *Nw., Inc. v. Ginsberg*, 134 S.Ct. 1422, 1430 (2014).

"The words 'related to,' as used in this context, 'express a broad pre-emptive purpose.'" *Wellons v, Nw. Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (quoting *Morales*, 504 U.S. at 388). A claim relates to rates, routes, or services if it has "a connection with, or reference to airline 'rates, routes, or services.'" *Morales*, 504 U.S. at 384. However, "'[s]ome state actions may affect [airline fares, routes, or services] in to tenuous, remote, or peripheral a manner' to

have pre-emptive effect." *Id*. at 390 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, (1983)) (alteration in original). Under this framework, "the state laws whose 'effect' is 'forbidden' under federal law are those with a 'significant impact' on carrier rates, routes, or services." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 375 (2008) (quoting *Morales*, 504 U.S. at 388, 390).

AMC argues that the plaintiffs' claims for violations of various state wage and hour laws, unjust enrichment and retaliation are all "related to" the company's rates, routes, or services. It contends that the cost of labor clearly impacts how many employees AMC is able to employ, and thus, the services it is able to provide, which in turn would also affect the rates it must charge to air medical services. Additionally, AMC attempts to limit the analysis of preemption to the time the employees sleep when on shift. However, the plaintiffs' contend that as employees they are often assigned by AMC to teach courses to healthcare providers in their service area, attend training, work public relation events and other activities not related to air operations. This results in an employee working more than the normally assigned forty-eight hours per week.

AMC relies heavily on *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422 (2014), in support of its argument. In *Ginsberg*, the Court considered whether a claim seeking reinstatement of the plaintiff in an airline frequent flyer program related to rates, routes, or services. It found there was clearly a connection with airline rates because the program confers benefits on the user which eliminates or reduces the rate that a customer pays. *Id*. at 1431. *Ginsberg* is easily distinguishable. Here, the plaintiff's claims concern the payment of overtime wages under state wage and hour laws. Comparing a breach of implied covenant claim seeking to restore membership perks, (which would result in reduced or eliminated prices) to employee overtime

payments highlights that even though wage laws in some way affect rates, routes, or services, that connection is too tenuous, remote, and peripheral to be preemptive. *See DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 87-88 (1st Cir. 2011) (holding that a tip law does more than regulate an employment relationship because as applied the law "directly regulates how an airline service is performed and how its price is displayed to customers—not merely how the airline behaves as an employer…"); *see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (California wage law is not preempted by the Federal Aviation Administration Authorization Act because, while the law "in a certain sense is 'related to' … prices, routes and services, … effect is no more than indirect, remote, and tenuous.").

While some state actions are contrary to the preemptive purpose of the ADA, Congress did not intend for the ADA to completely preempt all state actions in this area. The Court concludes that this action is not preempted simply because the claims are asserted against an air carrier. The state wage and hour laws regulate the employment relationship between AMC and the plaintiffs. They do not have a sufficient connection with the rates, routes or services of AMC to be preempted. Additionally, for the same reasons the wage and hour laws are not "related to" rates, routes or services and are not preempted, the unjust enrichment claim and retaliation claims are not preempted.

**D.    Statute of Limitations**

KRS § 413.120(2) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." Because the KWHA does not specify a statute of limitations for wage and hour claims, they

are subject to a five-year statute of limitations. *See Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 769 (E.D. K.y. 2013) (applying five- year statute of limitations from KRS § 413.120(2) to KWHA claim because "KRS Chapter 337 does not specify a separate statute of limitations for such a claim.") (quoting *Metro Louisville/Jefferson Cnty. Govn't v. Abma*, 326 S.W.3d 1, 6 (Ky. Ct. App. 2009). In addition to the KWHA claims, the five year statute of limitations also applies to plaintiffs' unjust enrichment claims. *See, e.g., Ellis v. Arrowood Indemnity Co.*, No. 12-140-ART 2014 WL 2818458, at *7 (E.D. Ky. June 23, 2014) (citing multiple decisions identifying KRS § 413.120 "as the appropriate statute of limitations for unjust enrichment claims.").

As with FLSA claims, the statute of limitations applicable to KWHS claims "effectively cuts off claims for overtime pay which are more than five years removed from the filing date of the plaintiffs' wage and hour claims." *Com. v. Hasken,* 265 S.W.3d 215, 226 (Ky.Ct.App.2007), *superseded, in part, by statute,* Ky.Rev.Stat. § 95A.250 (2009), *as recognized in Madison Cnty. Fiscal Court v. Ky. Labor Cabinet,* 352 S.W.3d 572, 577 (Ky.2011) (recognizing that 2009 amendment of KY. REV. STAT. § 95A.250 restored the pre-*Hasken* method of calculating firefighters' overtime pay). However, Kentucky equitably tolls its statute of limitations whenever the defendant's wrongful conduct prevents a plaintiff from discovery his or her claims. *See Osborn v. Griffin*, 865 F.3d 417, 437 (6th Cir. 2017) (citing KSR 413.190(2)). The Kentucky Supreme Court has held that "the statute's reference to 'other indirect means' of obstruction of an action still requires an act or conduct that remains 'affirmatively fraudulently.'" *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009) (citing *Adams v. Ison*, 249 S.W.2d 791, 792 (Ky. 1952). The defendant's action must consists

of some action or conduct which misleads or deceives the plaintiff and obstructs or prevents him or her from bringing the suit before the statute of limitations runs. *See id*.

The plaintiffs argue that, due to alleged fraudulent representations by AMC, they were unaware that they should be receiving overtime pay. As a result, they contend that the statute of limitations should be tolled. They specifically assert that AMC misrepresented that it was not required to pay overtime due to the National Railway Act. The plaintiffs rely on AMC's Employee Handbook in support of their argument that AMC fraudulently misrepresented it was not obligated to pay overtime pay. The relevant portion states:

> Under the Fair Labor Standards Act (FLSA), employees classified as non-exempt are eligible for overtime pay. However, Air Methods as an employer is governed by the Railroad Labor Act (RLA). Under this Act, employees are exempt from overtime pay.

[Record No. 5-2, p. 10; *see id*. at p. 9 (Railway Labor Act/Fair Labor Standard Act)]

The plaintiffs rely on *Payne v. Tri-State Careflight, LLC*, No. CIV 14-1044, 2016 WL 6396214 (D.N.M. Oct. 25, 2016), in support of this argument. However, in addition to its non-binding nature, the plaintiffs have misstated the import of *Payne* as well as the language in the employee handbook. The issue in *Payne* was whether the RLA demonstrated congressional intent for field preemption of state wage and hour laws, not whether the employees were exempt from overtime pay under federal wage law, which is what the AMC employee handbook represents by directing the reader to the interplay between the FLSA and RLA.[2] The

---

[2] Section 213(b)(3) if the FLSA exempts from its overtime pay requirements "any employee of a carrier by air subject to the provisions of Title II of the RLA." 29 U.S.C. § 213(b)(3). Title II of the RLA applies "to every common carrier by air engaged in interstate or foreign commerce . . . ." 45 U.S.C. § 181. AMC is an air ambulance service operating pursuant to an FAA Air Carrier Certificate authorizing it to operate as an air carrier and conduct common carriage operations. Therefore, AMC is carrier by air subject to Title II of the RLA. *See* Record No 5-2, p. 9.

plaintiffs cannot rely on statements contained in the employee handbook regarding FLSA overtime pay exemption to claim that they were unaware of state statutory rights to overtime pay.

The plaintiffs conclude by suggesting that the issue of when they first learned of their cause of action is a disputed material fact, which cannot be adjudicated at this time. They cite *Hasken v. City of Louisville*, 173 F. Supp.2d 654 (W.D. Ky. 2001), to suggest that the when they first learned of the cause of action is disputed. While *Hasken* dealt with employees working the same type of 24 hour shifts as the current plaintiffs, little else is similar. There, the court was faced with whether the FLSA claims were equitably tolled due to alleged errors in the calculation of overtime pay, not failure to pay overtime pay all together. *Hasken*, 173 F. Supp.2d at 661-62. The issue here concerns AMC's failure to pay overtime pay, not the calculation method. The plaintiffs would have been aware of this failure at the end of each pay period when they received their pay checks, lacking any overtime pay. *See Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988) (stating "a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid.").

Applying the five-year statute of limitations, Davenport's, Fryman's, and Logsdon's claims must be dismissed, as they were not employed by AMC at any time after 2008, 2009, and 2010 respectively. The claims of all other plaintiffs will be restricted to overtime hours worked after March 22, 2012, or five years from the date the Complaint was filed.

### E.    Unjust Enrichment Preemption

AMC next argues that the plaintiffs' unjust enrichment claims are preempted by their KWHA claims. "As a federal court applying state law, the court 'anticipate[s] how the relevant

state's highest court would rule in this case and [is] bound by controlling decision of that court.'" *In re Amason.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 610 (6th Cir. 2017) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). No Kentucky court has addressed this issue. As a result, this Court is tasked to predict how the Supreme Court of Kentucky would rule if it were deciding this question of state law. *National Sur. Corp. v. Hartford Cas. Ins., Co.*, 493 F.3d 752, 755 (6th Cir. 2007) (internal citation and quotation omitted).

A Kentucky statute may preempt the common law through field preemption. *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985). Field preemption occurs "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party...." *Id.; see also, Hill v. Kentucky Lottery Corp.,* 327 S.W.3d 412, 421 (Ky.2010). There is no field preemption, however, where "the elements of the common law cause [ ] of action bear no resemblance to those intended to be embraced by the [statute]." *McDonald's Corp. v. Osborn,* 309 S.W.3d 274, 285–86 (Ky.App.2009). In Kentucky, field preemption turns largely on whether a common law claim and a statutory claim are "substantially similar." *Id.; see also, State Farm Mut. Auto. Ins. Co. v. Newburg Chiropractic, P.S.C.,* 683 F.Supp.2d 502, 508 (W.D.Ky.2010) (holding that preemption does not apply "where two statutes or causes of action address different kinds of culpable behavior."). Here, AMC argues that the KWHA preempts plaintiffs' unjust enrichment claim because both claims are based on the same alleged conduct and the Act provides plaintiffs a civil remedy.

AMC fails to cite any case holding that the KWHA preempts any common law cause of action. In response, the plaintiffs' cite to another court in this district, *Russell v. Citi*, No. 12-16-DLB, 2012 WL 5947450 (E.D. Ky. Nov. 28, 2012), in support of their argument that

their unjust enrichment claim is not preempted by the KWHA. In *Russell*, the court found that only one Kentucky court has analyzed whether the KWHA preempts a common law claim. *Id.* at *4 (citing *Dodd v. Dyke Industries, Inc.*, No. 3:04-CV-226-H, 2008 WL 1884081 (W.D. Ky. Apr. 28, 2008)). AMC does not cite *Russell* or *Dodd*, nor do they make any attempt to distinguish them from the case at bar.

AMC cites *Gryzby* and *Ogborn* which dealt with the Kentucky Civil Rights Act and preemption of claims "substantially similar." However, this Court can find no Kentucky cases extending those holdings and reasoning to the KWHA and common law claims. Lacking any clear indication of how the Kentucky Supreme Court would decide this issue, this Court is unwilling to predict that that KWHA preempts common law unjust enrichment claims. Further, as the court held in *Russell*, assuming *arguendo* that the KWHA can preempt unjust enrichment claims for overtime pay, it would be premature at this stage of the litigation to find as such, because if the plaintiffs cannot establish that they are entitled to relief under the KWHA, preemption of the unjust enrichment claims would not apply. *See Russell*, 2012 WL 5947450, at *5.

### IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Air Methods Corporation's Motion to Dismiss [Record No. 4] is **GRANTED**, in part, and **DENIED,** in part.

2. The claims asserted by Plaintiffs Stephanie Logsdon, Leslie Fryman, and Sean Davenport are **DISMISSED**, with prejudice.

3. Insofar as Count I and II are predicated on hours worked prior to March 22, 2012, those claims are **DISMISSED**, with prejudice.  All other allegations of the remaining plaintiffs encompassed by Count I, Count II, and Count III remain pending.

This 23rd day of October, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge