IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
*(Electronically Filed)*

| | |
|---|---|
| LETCH G. DAY, STEPHANIE E. FIELDS, STEVEN D. FRASURE, STEPHANIE G. LOGSDON, SONYA A. BURKHART, LESLIE H. FRYMAN, SEAN H. DAVENPORT, and EDWIN BENTLEY on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AIR METHODS CORPORATION d/b/a AIR METHODS OF KENTUCKY, AIR METHODS, AIR IDAHO RESCUE, ARCH AIR MEDICAL SERVICES, BLACK HILLS LIFE FLIGHT, LIFENET, LIFENET SOUTH CAROLINA, MERCY AIR, REACT ROCKFORD MEMORIAL HOSPITAL, WYOMING LIFE FLIGHT, ALABAMA LIFE SAVER, BAYFLITE, SAN ANTONIA AIRLIFE, GUTHRIE AIR, LIFESTART, PORTNEUF AIR RESCUE, NATIVE AIR, MEDFLIGHT, REACTSAINTS FLIGHT, WAKEMED AIR MOBILE, LIFEMED OF ALASKA, UNIVERSITY HOSPITALS MEDEVAC, TRI-STATE CARE FLIGHT, and MEDIFLIGHT OF OKLAHOMA<br><br>WILLIAM KELLY MILLER<br><br>and<br><br>JOSEPH BARKLEY HILL,<br><br>Defendants. | CIVIL ACTION NO. 5:17-cv-00183-DCR<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

FPDOCS 33814386.2

Defendants, Air Methods Corporation ("AMC"), William Kelly Miller and Joseph Barkley Hill (collectively "Defendants"), by and through counsel, submit this Memorandum of Law in Support of their Motion for Partial Judgment on the Pleadings.

## INTRODUCTION

As the Court is aware, AMC is a national provider of emergency air medical transport to patients with life-threatening injuries and illnesses. On March 22, 2017, Plaintiffs, Letch G. Day, Stephanie E. Fields, Steven D. Frasure, Stephanie G. Logsdon, Sonya A. Burkhart, Leslie H. Fryman, Sean H. Davenport and Edwin Bentley (collectively "Plaintiffs"), all former employees of AMC, filed this class action lawsuit alleging violations of the Kentucky Wage and Hour Act ("KWHA"), KRS 337.010, *et seq.*, and various other state wage and hour laws, unjust enrichment and retaliation. (Complaint, ¶¶ 33-79). **Importantly, all named Plaintiffs worked for AMC *only* in Kentucky.** (*Id.* ¶ 8). On April 20, 2017, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1453 and 1446 and the Class Action Fairness Act ("CAFA") (Docket #1).

In their Complaint, Plaintiffs assert AMC failed to pay its employees overtime for all hours worked over forty (40) hours in a week in violation of KRS § 337.225(1). (Complaint, ¶ 35). The underlying basis for this claim is AMC's policy regarding sleep time. Although they are all Kentucky residents and only worked for AMC in Kentucky, the named Plaintiffs claim these pay practices also violate other states' wage and hour laws, including Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin.[1] (*Id.* at ¶ 41). None of the named

---

[1] It appears from Plaintiffs' recently filed Motion for Class Certification that they have now limited the other states where they are claiming injury to seven states – Colorado, Illinois, Indiana, North Carolina, New Mexico, Maryland and Michigan.

2

Plaintiffs have or plead any connection to those other states, yet they seek to represent a class of all similarly situated employees performing work in Kentucky *and* these additional sixteen states. (*Id.* at ¶¶ 31, 32).  Defendants' alleged wage and hour violations also serve as the basis for Plaintiffs' unjust enrichment claims. (*Id.* at ¶ 46).  Finally, the named Plaintiffs allege Defendants retaliated against and/or wrongfully terminated them for complaining about Defendants' purported illegal pay practices.  (*Id.* at ¶¶ 77, 78).

On April 24, 2017, Defendants filed a Motion to Dismiss Plaintiffs' Complaint in its entirety.  The Court granted in part and denied in part Defendants' motion and dismissed the claims of Plaintiffs Logsdon, Fryman and Davenport as barred by Kentucky's five-year statute of limitations (Docket #11).

As more fully discussed below, all of Plaintiffs' claims brought in a representative capacity on behalf of current and former employees who are/were employed outside of Kentucky must be dismissed.  First, this Court lacks personal jurisdiction over AMC, a non-resident defendant, regarding these out-of-state claims, as they do not arise from AMC's contacts with Kentucky, the forum state.  In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 137 S. Ct. 1773 (2017)[2], the Supreme Court held that plaintiffs in a mass tort case who were not residents of California (the forum state) and were not injured in California, could not sue Bristol-Myers Squibb (which is incorporated in Delaware and headquartered in New York) in California. Although the Court did not mention whether its decision would also apply to a class action lawsuit such as this, in which the plaintiffs injured in the forum state (Kentucky) seek to represent a nationwide class of plaintiffs, most of whom were not injured in Kentucky, several district courts

---

[2] *Bristol-Myers Squibb* was not addressed in Defendant's original Motion to Dismiss (DE #4), because the decision came down after briefing was concluded.  There are now numerous cases applying *Bristol-Myers Squibb* to class actions such as this.

3

to consider the issue have found that *Bristol-Myers Squibb* logically extends to this situation. Accordingly, the class claims brought on behalf of the former and current non-Kentucky employees must be dismissed for lack of personal jurisdiction over AMC.

Moreover, Plaintiffs' representative claims brought on behalf of the purported class members who are/were employed outside of Kentucky should be dismissed, because the named Plaintiffs lack standing to bring such claims. The named Kentucky Plaintiffs cannot establish any connection to the other states named in the Complaint and, likewise, have failed to demonstrate *any* injury resulting from AMC's alleged violation of those states' laws. Indeed, the Plaintiffs—Kentucky residents—are not even subject to the protections of those laws. Thus, while Plaintiffs have standing to sue AMC for alleged violations under the KWHA, they lack any connection with the other states' laws. Consequently, the class claims they bring under the laws of any state other than Kentucky must be dismissed for lack of standing.

## STATEMENT OF FACTS

AMC is a Delaware corporation with its principal place of business in Colorado. (Docket #4-2, Affidavit of J. Losinger, ¶¶ 2). It operates an air medical emergency transport service providing services in forty-eight (48) states. AMC conducts business throughout the country under various assumed names (or d/b/a's), including Air Methods of Kentucky, Air Idaho Rescue, Arch Air Medical Service, Black Hills Life Flight, LifeNet South Carolina, React, Wyoming Life Flight, Alabama Life Saver, Bayflite, San Antonio AirLife, Guthrie Air, LifeStar, Portneuf Air Rescue, MedFlight, Saints Flight, WakeMed Air Mobile, LifeMed of Alaska, MedEvac, and Mediflight of Oklahoma.[3] (*Id.* at ¶¶ 3-21). Other than Air Methods of Kentucky, these d/b/a's do not operate in

---

[3] Although named in the Complaint as d/b/a's of AMC, the following are not d/b/a's of AMC, but rather are separate corporate entities: Mercy Air Service, Inc., LifeNet, Inc., Native Air Services, Inc. and Tri-

4

or serve Kentucky, have no business locations in Kentucky and do not employ any employees in Kentucky. (*Id.* at ¶ 22). They do not own or lease any real property in Kentucky and have no bank accounts in Kentucky. (*Id.*).

AMC is in the business of providing rapid response emergency transport services to save lives. As such, a key component of its service is the speed of its response. Importantly, flight crew members (flight nurses and flight paramedics) work 24-hour shifts and are required to stay on base near the helicopter in order to swiftly gear up and respond to emergency calls. However, they are permitted to sleep during their 24-hour shifts if they are not responding to an emergency call, and AMC designates a specific eight-hour period during the shift for employee sleep time. AMC pays straight-time for this eight-hour period and does not count the hours towards overtime calculations, unless an employee receives less than five hours of uninterrupted sleep. This is consistent with the Fair Labor and Standards Act's (FLSA) regulation regarding sleep time. *See* 29 C.F.R. § 785.22.

All the named Plaintiffs were previously employed by AMC d/b/a Air Methods of Kentucky in Kentucky. (Complaint, ¶¶ 8, 17-24). None of them ever worked for AMC outside of Kentucky. (*See id.*).

## LAW AND ARGUMENT

### I. THE LEGAL STANDARD

"The standard for review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Tp. Of*

---

State Care Flight, L.L.C. (Affidavit of J. Losinger, ¶ 2). They have not been properly named or served and, therefore, are not parties to the action.

*Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).[4]  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotations omitted).

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER AMC REGARDING CLAIMS BY PUTATIVE CLASS MEMBERS WHO ARE/WERE EMPLOYED BY AMC OUTSIDE OF KENTUCKY.

AMC concedes that there is personal jurisdiction over it for the five named Plaintiffs' claims and for the claims of putative class members who reside or work in Kentucky.  However, pursuant to Fed. R. Civ. P. 12(b)(2), this Court lacks personal jurisdiction over AMC, a non-resident defendant, regarding all claims of putative class members who are/were employed by AMC outside of Kentucky (i.e., those employed by AMC in Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin) and who bring claims under the laws of the states outside of Kentucky in which they reside.  There are two ways in which a Kentucky court may exercise jurisdiction over a nonresident corporation: specific or general jurisdiction.  Specific jurisdiction, typically known as long-arm jurisdiction, requires the plaintiff's cause of action arise out of the defendant's contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. V. Hall*, 466 U.S. 408, 414 n.8 (1984).  On the other hand, general jurisdiction arises when the defendant's contacts with the forum state are so continuous and systematic as to

---

[4] Fed. R. Civ. P. 12(c) states that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  Courts interpreting Rule 12(c) have held that "pleadings are closed upon the filing of a complaint and answer, unless a counterclaim, cross-claim or third-party claim is interposed." *Wright & Miller, Federal Practice and Procedure: Civil 2d* § 1367, at 512.  Fed. R. Civ. P. 12(h)(2), meanwhile, states that "[f]ailure to state a claim upon which relief can be granted…may be raised…by a motion under Rule 12(c)."

6

render it essentially at home in that state. If general jurisdiction exists, a court may exercise jurisdiction over a defendant regardless of whether the cause of action arises from the defendant's contacts with the forum state.

### A. The Court Lacks General Jurisdiction Over AMC As To The Claims Of The Out-Of-State Plaintiffs.

AMC's business transactions in Kentucky are not sufficient to establish general jurisdiction over AMC regarding the alleged claims by putative class members who are/were not employed by AMC in Kentucky and who bring claims under the laws of the states outside of Kentucky in which they reside. As an initial matter, Kentucky's long-arm statute does not provide for general jurisdiction. But even if it did, a court may only assert general jurisdiction over an out-of-state corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction is permissible only in a state in "which the corporation is *fairly regarded as at home*." *Id.* (emphasis added). A corporation's state of incorporation and principal place of business are the "paradigm" locations where a corporation is "at home." *Id.* at 2853–54.

AMC is a Delaware corporation with its principal place of business in Colorado. Although AMC provides air medical emergency transport services throughout Kentucky and employs several employees in Kentucky, AMC's services provided in Kentucky are not germane to the general jurisdiction analysis. AMC's headquarters and central business operations are located in Colorado. Accordingly, AMC is not "essentially at home" in Kentucky. Kentucky, therefore, does not have general jurisdiction over AMC, further supporting the dismissal of the claims of putative class members who are/were not employed by AMC in Kentucky.

### B. The Court Also Lacks Specific Jurisdiction Over AMC As To The Claims Of The Out-Of-State Plaintiffs.

In order to exercise specific (or limited) personal jurisdiction over AMC in regards to claims of non-Kentucky employees, this Court must first be authorized by Kentucky's long-arm statute, and, if so, its exercise of jurisdiction must also comport with the Due Process Clause of the Fourteenth Amendment. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014); *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). A two-prong test must be met in order to exercise jurisdiction under Kentucky's long-arm statute. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the non-resident's conduct or activities must fall within one of the nine enumerated subsections in Kentucky's long-arm statute, KRS § 454.210. Second, the plaintiff's claims must ***arise from*** the non-resident's actions. The "arising from" prong of Kentucky's test for specific personal jurisdiction requires proof of a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" *Id.* at 59. Plaintiffs, as the party asserting a claim against the non-resident defendant, must prove that there is a sufficient causal link between their claims and the non-resident's alleged contacts with Kentucky. *Id.* Courts should examine "defendant's suit-related conduct" and its connection to the forum state (Kentucky); "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

Since the Court's prior Memorandum Opinion and Order on Defendant's Motion to Dismiss (DE #11), additional case law has developed interpreting the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), particularly with respect to class actions and whether courts have specific personal jurisdiction over defendants regarding the claims of non-resident unnamed class members.

Although this Court briefly mentioned the *Bristol-Myers Squibb* decision in a footnote in its previous Order and acknowledged its potential effect on class actions[5], that decision came out on June 19, 2017, three weeks after Defendants filed their reply brief in support of Defendants' Motion to Dismiss, and, thus, Defendants did not have the opportunity to address the case or its progeny.  Defendants contend that *Bristol-Myers Squibb* should be applied to the class action context, regardless of whether the non-resident class members are named or unnamed.  Plaintiffs should not be allowed to forum shop for their preferred jurisdiction and deliberately fail to name non-resident class members in order to avoid personal jurisdiction issues.  This would result in a lengthy and costly litigation, including unnecessary nationwide class discovery, only to have these claims of non-resident class members dismissed at or after the class certification stage once the court finally considers them to be "parties."

In *Bristol-Myers Squibb*, plaintiffs from around the country—86 California residents and 592 residents from 33 other states—brought a mass tort products liability action against Bristol-Myers Squibb Company ("BMS") in California state court alleging that the pharmaceutical company's drug, Plavix, damaged their health in violation of California law.  *Id.* at 1778.  The California Supreme Court held that the lower court had specific personal jurisdiction over BMS with regards to the non-residents' claims because they could be aggregated with the California residents' claims.  The United States Supreme Court reversed.  It held that for purposes of specific jurisdiction (unlike general jurisdiction), "[t]he mere fact that *other* plaintiffs were [harmed in] California—and allegedly suffered the same injury as nonresidents—does not allow the State to

---

[5] Despite the Court's acknowledgment of *Bristol-Myers Squibb*, it ultimately rejected Defendants' argument that this Court does not have personal jurisdiction over AMC regarding all claims brought in a representative capacity of those who were employed by AMC outside of Kentucky, "because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members." (DE #11, p. 4).

9

assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. The Court further explained that the "primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum state." *Id.* at 1779. "A court with general jurisdiction may hear *any* claims against that defendant, even if all the incidents underlying the claim occurred in a different state." *Id.* at 1780. But for "specific jurisdiction, the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* The "mere fact that *other* [resident] plaintiffs" ingested BMS drugs in California and sustained the same injuries as the non-resident plaintiffs did not provide the required "connection between the forum and the specific claims at issue" for the court to exercise jurisdiction over the non-resident's claims against BMS. *Id.* at 1781. Accordingly, the Court found there was an insufficient link between California and the non-resident plaintiffs, and those plaintiffs' claims had to be dismissed. *Id.* at 1781 ("the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California").

Since the Court's decision in *Bristol-Myers Squibb*, several district courts have applied the Supreme Court's reasoning to the class action context for both named and unnamed non-resident class members. For example, in *McDonnell v. Nature's Way Products*, LLC, 2017 WL 4864910 (N.D. Ill. October 26, 2017), the Northern District of Illinois applied *Bristol-Myers Squibb* to a putative nationwide class action brought by the purchasers of a vitamin supplement that was manufactured outside of the United States contrary to the product's label, which stated the product was manufactured in the United States. *Id.* at *1. Much like in this case, the named Plaintiffs—who were Illinois residents—sued in federal court in Illinois, claiming the company's conduct constituted false advertising in violation of the Illinois Consumer Fraud and Deceptive Practices Act and the consumer fraud statutes of seven other states. *Id.* In reliance on *Bristol-Myers Squibb*,

10

the district court dismissed the claims of the unnamed non-resident class members:

> Although these individuals are not named plaintiffs, the analysis used in *Bristol-Myers Squibb Co.* is instructive in considering whether the Court has personal jurisdiction over the claims [plaintiff] asserts on their behalf against [defendant]. … Because the only connection to Illinois is that provided by [the named plaintiff's] purchase of [the vitamin supplement], which cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents where [defendant] has no other connection to this forum, the Court dismisses all claims … brought on behalf of non-Illinois residents or for violations of Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington law without prejudice.

*Id.* at *4. *See also DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. January 18, 2018) (dismissing claims based on out-of-state plaintiff classes and noting "it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply Bristol-Myers Squibb to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants"); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) (noting that the court lacked personal jurisdiction over claims of putative class members with no connection to Arizona, the forum state); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017); *Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *4-5 (N.D. Ill. Feb. 13, 2017) (dismissing plaintiff's claims for violations of non-Illinois consumer fraud statutes where plaintiff was the sole connection between defendants and Illinois).

This case is on all fours with these decisions. Here, we have five Kentucky Plaintiffs suing in Kentucky who purport to represent putative class members from sixteen (or seven, as the case may be) other states. Those putative class members have no connection with Kentucky, the forum state, and therefore, their claims should be dismissed.

*Bristol-Myers Squibb* should apply with equal force to class action cases. The Supreme Court has noted that "Rule 23's [class action] requirements must be interpreted in keeping with

11

Article III constraints, and with the Rules Enabling Act, which instructs that the [federal court] rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997) (quoting 28 U.S.C. § 2072(b)).  Since *Bristol-Myers Squibb* found that the Fourteenth Amendment's due process rights prohibited non-resident plaintiffs injured outside the forum state from aligning their claims with an in-forum resident, "[u]nder the Rules Enabling Act, a defendant's due process interest should be the same in the class context." *Practice Management Support Servs., Inc. v. Cirque Du Soleil Inc.*, 2018 WL 1255021, at * (N.D. Ill. Mar. 12, 2018).  Moreover, even if the unnamed class members are not considered "parties" before class certification, the Court will be forced to address personal jurisdiction in conjunction with Plaintiffs' motion for class certification.  In order to avoid lengthy and costly class certification discovery, it is most logical to address personal jurisdiction at this stage of the case.

Therefore, in accordance with the specific jurisdiction analysis, the putative class members who are/were not employed by AMC in Kentucky must establish that their employment-related claims "arise from" AMC's activities in Kentucky.  This they cannot do.  Their claims against AMC for violations of other states' wage and hour laws do not "arise from" AMC's business contacts in Kentucky.  Plaintiffs do not allege that any of the non-Kentucky employees' claims against AMC arise out of any contact that AMC had with Kentucky.  Indeed, their claims against AMC arise solely out of work performed outside of Kentucky in other states.  Accordingly, the Court should dismiss all claims of the non-resident putative class members.

**III.   THE NAMED PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS ON BEHALF OF PUTATIVE CLASS MEMBERS UNDER THE LAWS OF STATES WITH WHICH THEY HAVE NO CONNECTION.**

Even if the Court determines that it need not consider the claims of the non-resident

12

putative class members for purposes of its personal jurisdiction analysis, these claims must nevertheless be dismissed because the named Plaintiffs lack standing to assert such representative claims. The named Kentucky Plaintiffs cannot establish any connection to the other states named in the Complaint and, likewise, have failed to demonstrate any injury resulting from AMC's alleged violation of those states' laws. Thus, while Plaintiffs have standing to sue AMC under the KWHA, they lack any connection with the other states' wage and hour laws. Accordingly, the class-wide claims (including any potential retaliation claims related to alleged complaints of improper wages) brought under the laws of Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin must be dismissed for lack of standing.

> In order to demonstrate Article III constitutional standing, a plaintiff must prove:
>
> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012) (citing *Wuligar*, 567 F.3d at 793). In other words, the plaintiff must demonstrate (1) an injury in fact; (2) causation; and (3) redressability. Moreover, a plaintiff's standing to sue must be considered for each claim alleged. "The complaining party must … show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

> In addition to Article III standing, a plaintiff must also establish prudential standing, which requires a showing that:
>
> (1) a plaintiff must assert his own legal rights and interests, without resting the

13

claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question.

*McGlone,* 681 F.3d at 729 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

Standing is a threshold question in every case, and the burden of proof to establish standing rests with the plaintiff. *Id.* at 728 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). This is no different in a class action lawsuit. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). "That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* (internal quotations omitted). Accordingly, "[a] named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009). In other words, a plaintiff whose injuries are not causally related to State A, or for whom the laws of State A cannot offer redress, does not have standing to allege a claim under the laws of State A, even though he or she has standing to sue under the laws of another state. *See id.* Or as applied to this case, a Kentucky plaintiff whose injuries are not casually related to Maryland or Michigan or Illinois, etc., or for whom those states' laws cannot offer redress, does not have standing to allege a claim under the laws of Maryland or Michigan or Illinois, etc. or any of the other states named in the Complaint.

In this lawsuit, the named Kentucky Plaintiffs attempt to assert state wage and hour violations on behalf of current and/or former employees who worked for AMC in several other states. These Plaintiffs, however, cannot establish any injury resulting from AMC's supposed violation of those states' laws. The named Plaintiffs were never employed in those states and,

14

thus, were not subject to the protections of their wage and hour laws.  Therefore, they cannot establish the injury prerequisite for Article III constitutional standing, and their claims for violations of Colorado, Hawaii, Indiana, Illinois, Maine, Maryland, Michigan, Minnesota, North Carolina, New Mexico, New Jersey, New York, Rhode Island, Washington, West Virginia and Wisconsin wage and hour laws must be dismissed.  Likewise, since Plaintiffs' claims for unjust enrichment arise from the same set of facts and circumstances—AMC's alleged failure to pay overtime wages pursuant to state laws—Plaintiffs also lack standing to assert unjust enrichment claims on behalf of the non-resident class members because they suffered no injury as a result of AMC's pay practices in those states.

Put simply, a named plaintiff in a putative class action does not have standing to allege claims on his own behalf or on behalf of putative class members "under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws" *Smith v. Pizza Hut, Incorporated*, 2011 WL 2791331 (D. Colo. July 14, 2011).  Numerous cases support this rule.  *See e.g., Hunnicutt v. Zeneca, Inc.*, 2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) (named plaintiffs lack standing to assert class-wide claims under laws of states with which they have no connection because they cannot demonstrate any injury flowing from violation of those states' laws); *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365, at * 7 (E.D. Mich. July 17, 2012) (reasoning that the complaint "contain[ed] no factual allegations that connect[ed] any injuries by the named [plaintiffs] to any causes of action arising in [those] states" and that the complaint alleged no facts "on which to find a connection between an alleged injury and some wrongful conduct that would implicate the laws of these states in which no named [plaintiff] resides"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 659 (E.D. Mich. 2011) ("The [complaint] simply fails to name plaintiffs who have suffered the injuries giving

15

rise to claims under the laws of any of the states in which the named [plaintiffs] do not reside. The current [plaintiffs] have no standing to bring those claims."); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at * 10 (D.N.J. Oct. 20, 2011) (dismissing all claims arising under state laws with no connection to named plaintiffs because named plaintiffs lacked standing to bring such claims); *Thomas v. Metropolitan Life Insurance Company*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008) ("Absent amendment to allege a sufficient connection between [the named plaintiff] and his claim that [the defendant's] violation of a particular state's consumer fraud or deceptive trade practices act resulted in specific damage to him, [the named plaintiff's] claims alleging violations of the laws of the 40 states where he is not alleged to be a resident, should be dismissed for lack of standing."). Accordingly, Plaintiffs lack standing to assert claims on behalf of the non-Kentucky putative class members, and those claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants, Air Methods Corporation, William Kelly Miller and Joseph Barkley Hill, respectfully request the Court grant Defendants' Motion for Partial Judgment on the Pleadings and dismiss Plaintiffs' claims brought in a representative capacity on behalf of current and former employees who are/were employed outside of Kentucky.

Respectfully submitted,

*/s/ Cynthia Blevins Doll*

Cynthia Blevins Doll
Megan R. U'Sellis
FISHER & PHILLIPS LLP
220 West Main Street, Suite 1700
Louisville, Kentucky 40202
Telephone: (502) 561-3990
Facsimile: (502) 561-3991
E-Mail: cdoll@fisherphillips.com
         musellis@fisherphillips.com

Lonnie Giamela
FISHER & PHILLIPS, LLP
444 South Flower Street, Suite 1500
Los Angeles, CA 90071
Telephone: (213) 330-4454
Facsimile: (213) 330-4501
E-mail: lgiamela@fisherphillips.com

Chris Ahearn
FISHER & PHILLIPS, LLP
2050 Main Street, Suite 1000
Irvine, CA 92614
Telephone: (949) 798-2120
Facsimile: (949) 851-0152
E-Mail: cahearn@fisherphillips.com

COUNSEL FOR DEFENDANTS,
*AIR METHODS CORPORATION,*
*WILLIAM KELLY MILLER* and
*JOSEPH BARKLEY HILL*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 30th day of March, 2018, a true and correct copy of the foregoing *Defendants' Memorandum In Support of Motion for Partial Judgment on the Pleadings* was electronically filed using the Court's electronic filing system and served, via the Court's electronic filing system, upon the following counsel of record:

Charles W. Arnold, Esq.
Christopher D. Miller, Esq.
ARNOLD & MILLER, PLC
401 West Main Street, Suite 303
Lexington, KY  40507
Telephone:  (859) 381-9999
Facsimile: (859) 389-6666
E-Mail:  carnold@arnoldmillerlaw.com
E-Mail:  cmiller@arnoldmillerlaw.com

COUNSEL FOR PLAINTIFFS

and

J. Robert Cowan, Esq.
COWAN LAW OFFICE, PLC
2401 Regency Road, Suite 300
Lexington, KY  40503
Telephone:  (859) 523-8883
Facsimile:  (859) 523-8885
E-Mail:  kylaw@cowanlawky.com

CO-COUNSEL FOR PLAINTIFFS

                                                 */s/ Cynthia Blevins Doll*
                                                 COUNSEL FOR DEFENDANTS