*Filed Electronically*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CIVIL ACTION NO. 5:17-CV-183

LETCH G. DAY, STEPHANIE E. FIELDS, STEVEN D.
FRASURE, SONYA A. BURKHART, and EDWIN
BENTLEY on behalf of themselves and all others
similarly situated                                                                    PLAINTIFFS,

v.

AIR METHODS CORPORATION *et al.*                                      DEFENDANTS.
_____

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
_____

Plaintiffs, Letch G. Day, Stephanie E. Fields, Steven D. Frasure, Sonya A. Burkhart, and Edwin Bentley behalf of themselves and all others similarly situated, submit their response in opposition to the motion for judgment on the pleadings filed by the defendants Air Methods Corporation, doing business as AirMethods of Kentucky, Air Methods, Air Idaho Rescue, ARCH Air Medical Service, Black Hills Life Flight, LifeNet, LifeNet South Carolina, Mercy Air, REACT Rockford Memorial Hospital, Wyoming Life Flight, Alabama Life Saver, Bayflite, San Antonio AirLife, Guthrie Air, Lifestar, Portneuf Air Resuce, Native Air, MedFlight, REACTSaints Flight, WakeMed Air Mobile, University Hospitals MedEvac, LifeMed of Alaska, Tri-State Care Flight, and Medicflight of Oklahoma, Joseph Barkley Hill, and William Kelly Miller (collectively AMC).

I.       INTRODUCTION

This is a simple case.  AMC failed to properly provide overtime compensation to its clinical employees.  AMC is a national provider of emergency air transport to patients with life-threatening injuries and illnesses." (DE 4-1 at 43).  AMC concedes that it does

business as "Air Methods of Kentucky" and has business locations and employees in Indiana and Kentucky and serves Indiana, Kentucky, and West Virginia." (DE 4-2 at ¶ 3).  However, AMC asserts its other d/b/as do "not own or lease any real property in Kentucky and [have] no bank accounts in Kentucky" as a shield against general jurisdiction (DE 28-1 at 298).[1]  It is important to note that AMC is registered as a foreign corporation with the Kentucky Secretary of State (KYSOS) under the name "Air Methods Corporation."   The KYSOS notes that "Air Methods Kentucky" was an assumed name for Rocky Mountain Holdings, LLC, which became inactive on September 18, 2014.  In other words, "Air Methods of Kentucky" does not exist as a legal entity; instead defendant AMC is the entity conducting business and otherwise transacting in Kentucky.  This is confirmed by the fact that AMC has sued dozens of Kentucky citizens under the name "Air Methods Corporation" to recover unpaid debts incurred by providing air medical services.

AMC conceded that "flight crew members [flight nurses and flight paramedics] work 24-hour shifts and are required to stay on base near the helicopter in order to swiftly gear up and respond to emergency calls." (DE 4-1 at 45).  In addition to the eight hours of mandatory overtime that AMC admits, employees are required to participate in the provision of fee-based continuing education classes to aid healthcare providers in their service area.  AMC requires employees to teach these courses. This has resulted in AMC employees working more than the normally assigned forty-eight hours per week. (DE 4-1 at 45). Employees are also required to engage in onerous additional

---

[1] While Defendant AMC does business under numerous names, it is Defendant AMC and not the fictitious d/b/as that actually owns property, leases real estate, and holds bank accounts.

hours for training, public relation events, and other activities wholly unrelated to their primary employment duties.

AMC unlawfully imposed "sleep time" deductions from overtime calculations for clinical staff members as described by the Fair Labor Standards Act (FLSA) and, more specifically, 29 C.F.R. § 785.22.[2]   However, no such "sleep time" exemption was available under certain state wage and hour laws.  In particular, these state laws require employers to compensate non-exempt employees at the "overtime" rate of one and one-half times their regular hourly rate for each hour worked in excess of forty hours per week.

AMC has been involved in a litany of litigation concerning state wage and hour issues.  In at least two venues, courts have held that AMC is not exempt from state wage and hour laws governing overtime.  However, to this day, AMC continues their practice of failing to provide compensation for all overtime owed.

On March 21, 2018, plaintiffs filed their motion for class certification (DE 24), seeking certification of claims for violations of state overtime requirements (Count 1) and unjust enrichment (Count 2) for the following class:

1. All AMC clinical employees who performed work in Kentucky on or after March 22, 2012;

2. All AMC clinical employees who performed work in Colorado on or after March 22, 2010;

---

[2] It is without dispute that due to the Railway Labor Act, defendant AMC is not subject to the overtime provisions of the FLSA.  Thus, the case *sub judice* only involves state law claims.

3. All AMC clinical employees who performed work in Illinois, Indiana, North Carolina, and New Mexico on or after March 22, 2015; and,

4. All AMC clinical employees who performed work in Maryland and Michigan on or after March 22, 2014.

The named plaintiffs are five former AMC clinical employees who performed work during the above referenced time periods primarily in Kentucky and some in Colorado. Like all members of the proposed class, the named plaintiffs did not receive proper overtime compensation. AMC conceded that the method used to calculate overtime compensation to the named plaintiffs was also applied to members of the proposed class. Initially, AMC represented to the court that approximately 393 clinical employees would be members of the proposed class. (DE 1 at 6). Subsequently, AMC provided a document that purports to be a listing of the putative class members which consists of 531 employees.[3] As articulated in DE 24, the named plaintiffs can easily satisfy the requirements of Federal Rule of Civil Procedure (FRCP) 23.

Subsequent to plaintiffs' motion for class certification, the court, *sua sponte,* issued an order (DE 25) which set forth a schedule "for the determination of the class certification issue in this case." The order provided, *inter alia,* that defendants respond to the motion for class certification by April 11, 2018; plaintiffs file a reply by April 25,

---

[3] Plaintiffs believe that AMC has intentionally misrepresented the number of putative class members. For example, AMC contends that only ten (10) clinical employees have performed work in Colorado (the state that AMC purportedly calls home) during the applicable statute of limitations. However, the March 2017 map of bases of AMC's "Air Medical Services" lists approximately eleven (11) bases on the map. Likewise, AMC reported that only thirteen (13) employees worked in Indiana during the applicable statute of limitations, notwithstanding their own map shows seven (7) bases in the state. Discovery will hopefully reveal the actual number of members of the putative class.

2018; and that "within fourteen (14) days after a ruling on the class certification motion, the parties will confer to establish the scope and schedule for the remaining discovery, *motions,* and other matters, and submit a proposed schedule to the Court." *Id.* at 3. (Emphasis added).  Instead of following the court's clear directive, defendants chose to file the instant motion as a collateral attack on the class certification issue.

Perhaps most importantly, the issues raised in the instant motion were previously adjudicated in the court's memorandum and order dated October 23, 2017 (DE 11). The Court was right then, and other courts across the country have relied upon this Court's ruling as to these issues as good, solid law.

## II.    STANDARD OF REVIEW

FRCP 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  Courts across the country have held that a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are <u>not in dispute</u>[4] between the parties.  "The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Wright & Miller, *Federal Practice and Procedure*, Vol. 5C, § 1367 (3rd ed.).

Indeed, in considering such a motion, "the court must accept all the factual allegations of the complaint as true." *Paskvan v. City of Cleveland Civil Service*

---

[4] As we will show, *infra*, the Defendants make several factual statements to this Court, like "all named Plaintiffs worked for AMC *only* in Kentucky," and that the "putative class members have no connection with Kentucky." Not only does AMC fail to offer any factual support or citation for these bold statements, but they are also factually false. At the very least, there is a factual question relating to these statements.

*Commission*, 946 F.2d 1233, 1235 (6th Cir. 1991). "The court's inquiry is limited to whether the challenged pleadings set forth sufficient allegations to make out the elements of a right to relief," *Smith v. Michigan*, 256 F. Supp. 2d 704, 705 (E.D. Mich. 2003), and "[t]he motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan*, 946 F.2d at 1235. In *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 479 F.2d 478, 480 (6th Cir.1973), the court held that "for purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party *must be taken as true*, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" (Emphasis added.)   Other circuits have held that judgment on the pleadings is only appropriate when there is no unresolved issue of fact. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 869 F.2d 1542, 1550 (9th Cir.1989); *Honey v. Distelrath,* 195 F.3d 531, 532-33 (9th Cir.1999).

In *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011), the court opined that the same standard of review applies to motions for judgment on the pleadings under FRCP 12(c) and motions to dismiss under FRCP 12(b)(6).   FRCP 12(b)(6) requires that the court construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996).  This court may not grant a FRCP12(b)(6) motion based on disbelief of plaintiffs' factual allegations. *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir.1995)*.*

When matters outside the 12(c) motion are considered, the motion must be treated as a motion for summary judgment. Summary judgment is not a substitute for trial.  Under Rule 56(c), summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See*, *e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party, here, the plaintiffs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

This Defendant already filed a Motion to Dismiss before this Court which contained the same argument they are advancing again here. Additionally, there is a pending Motion for class action certification before this Court, and the instant Motion is nothing more than this defendant attempting to take now a third bite at this apple. No one forced this Defendant to file a Motion pursuant to Fed. R. Civ. Pro. 12(c). It did so voluntarily. However, in so doing, they have, by law, conceded that there is "no unresolved issue of fact" and that they are in agreement with the factual allegations contained in the Complaint in this action. Thus, AMC agrees that it failed to pay

overtime for all hours worked in excess of forty (40) per week, and that plaintiffs meet the requirements related to class certification.

III     ARGUMENT

As stated above,[5] the defendants make numerous factual assertions asserting information not contained within the pleadings.  Thus, this Court should view the instant motion as one for summary judgment.  Attached hereto as Exhibit A is an affidavit from Letch G. Day which refutes several factual allegations made by the defendants.  Due to dispute of material fact, this Court must deny the defendants' motion.  For example, the defendants claim that none of the named plaintiff performed work outside of Kentucky. However, Day performed work for AMC in Colorado during his employment.  While in Colorado, AMC employees from New Mexico and California were also present in the workplace.  Day has been present in AMC meetings in Lexington, Fayette County, Kentucky, where AMC employees from Indiana and Michigan were present.

A.     THIS COURT SHOULD DECLINE TO RELITIGATE THE ISSUE OF JURISDICTION.

Defendants' memorandum in support of its motion to dismiss (DE 4-1), asserts that this court "lacks personal jurisdiction over AMC, a non-resident defendant, regarding all claims of putative class members who are/were employed by AMC outside of Kentucky." *Id.* at 53.  The defendants further argue that "plaintiffs, as the party asserting a claim against the non-resident defendant, must prove that there is a

_____

[5] As an initial matter, the FRCP 12(c) motion may not be ripe for review.  The plain reading of the rule states that such motion is not proper until "after" the pleadings close.  This Court has not issued a scheduling order which sets forth a deadline for amending, supplementing, or otherwise modifying the Complaint.  At this time, there is nothing preventing plaintiffs from filing for leave to amend the complaint or to join parties.  The time for when the pleadings are considered "closed" has not yet occurred, thus the FRCP 12(c) motion must fail.

sufficient causal link between their claims and the non-resident's alleged contacts." *Id.* at 55. AMC asserted that "exercising jurisdiction over AMC regarding the out-of-state plaintiffs offends due process" (*Id.* at 57), and that "the Court also lacks general jurisdiction over AMC entities as to the claims of the out-of-state plaintiffs." (*Id.* at 58).

In the October 23, 2017, (DE 11) memorandum and order, the court rejected every argument set forth by defendants regarding jurisdiction. The court ruled "this argument is misplaced because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members." *Id.* at 190. As authority for its holding – and the primary authority for AMC's motion for judgment on the pleadings – the court cited *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco,* 137 S.Ct. 1773, 1789 (2017); *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002); and *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-564, 2017 WL 4224723, at *5 (N.D. Cal. September 22, 2017). As such, the court previously denied defendants' motion to dismiss with respect to its arguments related to jurisdiction.

On March 30, 2018, defendants filed their instant motion setting forth the same arguments made in its previous motion to dismiss (DE 4-1). Some paragraphs contained in the instant motion are copied and pasted from their FRCP 12(b)(6) motion. AMC attempts to justify the instant motion on the grounds that they did not specifically discuss *Bristol-Myers Squibb Co.,* in the original motion; they seek a second bite at the apple.

FRCP 12(g)(2) provides that a party filing a motion to dismiss "must not make another motion under this rule raising a defense or objection that was available to the

party but omitted from its earlier motion."   Furthermore, the law of the case doctrine establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the lawsuit. *See Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky.App.2004).  Law of the case involves issue preclusion in the same case prior to final judgment. *Pacific Employers Ins. Co. v. Sav–A–Lot of Winchester*, 291 F.3d 392, 398–99 (6th Cir.2002); and *Bowling v. Pfizer, Inc.,* 132 F.3d 1147, 1150 (6th Cir.1998).   A renewed or successive motion is appropriate only if one of the following grounds exists: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice." *Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), aff'd in part, rev'd in part on other grounds, 828 F.2d 514 (9th Cir.1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). *See also Pyramid Lake Paiute Tribe of Indians v. Hodel,* 882 F.2d 364, 369 n.5 (9th Cir.1989).

As previously articulated, defendants have failed to provide any new arguments of law related to jurisdiction.  *Per contra,* defendants recite the same arguments rejected by the court.  While plaintiffs concede that *Bristol-Myers Squibb Co.,* was rendered after defendants' original motion, the *Bristol-Myers Squibb Co.* court stressed that the case involved only the "straightforward application . . . of settled principles." 137 S.Ct. at 1783.  Notably, defendants relied upon two cases in their motion which were discussed in *Bristol-Myers Squibb Co.*  Therefore, defendants cannot argue that there has been a material change in controlling law.  Even if defendants could maintain that the holding in *Bristol-Myers Squibb Co.,* entitled it to relitigate the issue of jurisdiction, the court should decline further consideration given the fact that it explicitly considered the implications

of *Bristol-Myers Squibb Co.* when it held that the defendants were subject to the
jurisdiction of this court.

It should also be noted that both the Eastern District of Virginia and the Northern District
of Georgia have relied upon this Court's Memorandum and Opinion (DE 11) as authority
that "the claims of non-resident unnamed class members did not destroy personal
jurisdiction because 'the inquiry for personal jurisdiction lied with the named parties of
the suit asserting their various claims against the defendant, not the unnamed proposed
class members.'" *Sanchez v. Launch Tech. Workforce Sols., LLC,* No. 1:17-CV-01904-
ELR, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018).   *See also, Branch v. Gov't
Employees Ins. Co.*, No. 3:16-CV-1010, 2018 WL 358504, at *12 (E.D. Va. Jan. 10,
2018), which held:

> It is not necessary to consider GEICO's rather unique argument about
> personal jurisdiction, which is based on a rather strained reading
> of *Bristol–Myers Squibb Co. v. Superior Court of California,* -- U.S. --, 137
> S.Ct. 1773, 198 L.Ed.2d 395 (2017) that has been soundly rejected by
> other courts. *See Day v. Air Methods Corp.,* No. 5:17-[CV-]183-DCR, 2017
> WL 4781863, at *2 (E.D. Ky. Oct. 23, 2017); *Fitzhenry–Russell v. Dr.
> Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5
> (N.D. Cal. Sept. 22, 2017).

This Court correctly held that it had personal jurisdiction over the defendants for claims
related to non-resident putative class members, other courts have concurred with this
Court's holding, and the defendants have failed to demonstrate why this Court was
incorrect in its original ruling.  Therefore, the Court should decline to relitigate this issue
and deny the defendants' motion in its entirety.

B.    THE COURT MAY EXERCISE SUPPLEMENTAL JURISDICTION OVER AMC FOR CLAIMS BY PUTATUVE CLASS MEMBERS WHO ARE/WERE EMPLOYED BY AMC OUTSIDE OF KENTUCKY.

AMC has conceded that the court has personal jurisdiction over it for the five named plaintiffs' claims and for the claims of putative class members who reside or work in Kentucky.[6] (DE 28-1 at 299).  In its memorandum and order (DE 11), the court recognized that because defendants concede that personal jurisdiction is proper for the named plaintiffs, its arguments that the court lacks jurisdiction are unpersuasive.

28 U.S.C. § 1367(a) provides that a district court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy."[7]  On April 20, 2017, the defendants removed this action from state court to the Eastern

---

[6] It is important to note that all Kentucky members of the putative class, including the named plaintiffs, have physically performed work for AMC in Colorado.  Plaintiffs assert that AMC requires each and every employee to attend training and orientation in Colorado as a condition of their employment. While in Colorado, named plaintiff attended training alongside AMC employees from New Mexico and California. As such, plaintiffs should be able to pursue claims in Colorado not only for the unpaid overtime while physically present in that state, but also for every other AMC employee who similarly performed work in Colorado and failed to receive proper overtime compensation.  Likewise, plaintiffs have attended AMC employee meetings in Lexington, Fayette County, Kentucky, where employees based out of other states, including Michigan and Indiana, were physically present and performing work in Kentucky.  AMC's corporate representative even noted in her affidavit that "Air Methods of Kentucky has business locations and employees in Indiana and Kentucky and serves Indiana, Kentucky, and West Virginia." (DE 4-2 at ¶ 3).  Thus, it is extremely disingenuous for AMC to claim that "none of (the named plaintiffs) ever worked for AMC outside of Kentucky."

[7] It seems as if the defendants have lost sight of the fact that the plaintiffs have asserted a claim for unjust enrichment in addition to the claims under relevant state laws.  Even if this Court was inclined to believe that it lacked jurisdiction to proceed on claims under wage and hour law of the various states because the named plaintiffs were not injured by the laws of those states, this Court undoubtedly has jurisdiction for the unjust enrichment claims of out-of-state putative class members.

District of Kentucky, citing 28 U.S.C. §§ 1332(d), 1441, 1453 and 1446 as authority (DE 1 at 2) and asserted that the court was vested with original jurisdiction (DE 1 at ¶ 4).[8]

In *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004), the court held

> The Tenth Circuit has recently noted, that "every circuit court of appeals to address the question [has] upheld the application of pendent personal jurisdiction." *Botefuhr*, 309 F.3d at 1273. Like the Tenth Circuit "we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate." Id. When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts. We believe that judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by adopting this doctrine.

Under the pendent personal jurisdiction doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. *See, e.g. United States v. Botefuhr,* 309 F.3d 1263, 1272–75 (10th Cir.2002); *Robinson Eng'g Co., Ltd. Pension Plan Trust v. George,* 223 F.3d 445, 449–50 (7th Cir.2000); *ESAB Group v. Centricut, Inc.,* 126 F.3d at 628–29 (4th Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056–57 (2d Cir.1993); *Oetiker v. Werke,* 556 F.2d 1, 5 (D.C.Cir.1977); *Robinson v. Penn Cent. Co.,* 484 F.2d 553, 555–56 (3d Cir.1973); and *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft,* 563 F.3d 211 (6th Cir.2009) (pendent jurisdiction in diversity cases can be exercised in certain cases).

---

[8] It is ironic that the defendants accuse the named plaintiffs of forum shopping when it is the defendants that selected this forum via its removal of the action from state court.

In *Sloan v. General Motors, LLC,* 287 F.Supp.3d 850 (N.D. Cal. 2018), the district court analyzed the intersection of pendent jurisdiction and the holdings in *Bristol-Myers Squibb Co.,* and found that it was permissible to join out-of-state plaintiffs' claims despite the fact that both the corporate defendant and the out-of-state plaintiffs lacked contacts with the jurisdiction.  In support of that decision, the district court held that "federal courts are frequently called upon to interpret the laws of the several states," thus, the court was capable of adjudicating foreign state claims.  The court opined that it would not prejudice or burden the defendant because, in the absence of the exercise of pendent jurisdiction, those out-of-state plaintiffs would be able to file an action in their respective states and further held:

> Another reason why the exercise of pendent personal jurisdiction here would not be unreasonable is that if each plaintiff were instead to file a separate case and then successfully petition to consolidate the cases in an MDL, then defendant would still be required to litigate the same claims in whatever court is selected by the MDL panel. Although the MDL process does not relieve a plaintiff of the burden of demonstrating personal jurisdiction (the transferee court would analyze its personal jurisdiction according to whether each transferor court possessed it), it does suggest that it is not unreasonable, per se, to require defendant to litigate the out-of-state plaintiffs' claims in the court. It cannot be that the burden imposed on defendant here is so unreasonable as to be a due process violation but that an effectively identical burden resulting from consolidation pursuant to the MDL statute would not be. Although a defendant might be expected to argue that the MDL cases should be consolidated in the district of its headquarters (*i.e.*, in a forum where it is subject to general personal jurisdiction), the MDL panel regularly transfers them elsewhere, without due process concerns. *See*, *e.g.*, *In re Chrysler–Dodge–Jeep EcoDiesel Mktg. Sales Practices and Prods. Liability Litig.*, 273 F.Supp.3d 1377 (J.P.M.L. 2017) (consolidating cases in Northern District of California—not the home state of any defendant); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*, 148 F.Supp.3d 1367 (J.P.M.L. 2015) (centralizing cases in Northern District of California despite defendant's preference for Eastern District of Michigan).

In the case *sub judice,* AMC is essentially advocating that putative class members must file this exact action in at least eight different states.   All separate actions would be the same legal issues: (1) Was AMC subject to state wage and hour laws? (2) Was AMC permitted to deduct "sleep time" under applicable state wage and hour laws? (3) Did AMC act in "good faith" when failing to provide proper overtime compensation?

The first two issues are legal questions.   The "good faith" issue is the only one that may require trial.   Allowing trials in eight different states would invite inconsistent verdicts regarding "good faith."   Simply put, if AMC acted in bad faith in one jurisdiction, then it acted in bad faith in all jurisdictions.

The *Sloan* court correctly found that judicial economy is better served by having the claims of all plaintiffs heard in a single court when the issues "involve similar legal issues and all arise out of a common nucleus of operative facts relating principally to whether GM's engine was defective."   In the case *sub judice,* judicial economy demands that AMC be required to answer to all claims which stem from its nationwide method of calculating overtime and providing compensation.   This court should exercise pendent personal jurisdiction and deny defendants' motion for judgment on the pleadings.

C.     THIS COURT CAN OTHERWISE ASSERT PERSONAL JURISDICTION OVER AMC REGARDING CLAIMS BY PUTATUVE CLASS MEMBERS WHO ARE/WERE EMPLOYED BY AMC OUTSIDE OF KENTUCKY.

Given the fact that AMC has Kentucky employees and locations and also has regional meetings in Lexington, Fayette County, Kentucky with employees from out-of-state, the court should view AMC's affiliation with Kentucky as "continuous and systematic" as contemplated by *International Shoe* Co. *v. State of Washington*, 326

U.S., at 317, 66 S.Ct. 154 (1945).  The U.S. Supreme Court held in *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011), that a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state."[9]

AMC's reliance upon *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 421, 104 S.Ct. 1868, 1876 (1984) is misplaced.  In *Helicopteros,* the Court held that Texas lacked general jurisdiction over a corporation who only occasionally made purchases in Texas but otherwise did not regularly conduct business in Texas. The *Helicopteros* record reflected that a corporate representative only made one single trip to Texas to purchase equipment and services but did not otherwise operate in Texas.  In the case *sub judice,* defendant AMC conducts business operations on a daily basis in Kentucky, employs hundreds of Kentucky employees, holds regional meetings for out-of-state employees in Kentucky, and initiates debt collection litigation in Kentucky.  It is impossible for defendant AMC to contend that it does not regularly do business within Kentucky.  Its admission that it is subject to the jurisdiction of the court for the Kentucky claims is particularly revealing.

Furthermore, AMC's reliance upon *Bristol-Myers Squibb Co.* is likewise misplaced.  In *In re Chinese-Manufactured Drywall Prod. Liab. Litig*., No. MDL 09-2047, 2017 WL 5971622, at *12 (E.D. La. Nov. 30, 2017), the court noted:

> *"(BMS) was not a class action; it was a mass tort action"* in state court. *Fitzhenry–Russell, et al. v. Dr. Pepper Snapple Group, Inc*., 2017 WL

---

[9] This Court should take note that AMC claims that only 10 employees performed work in Colorado during the relevant time periods (in the state is purportedly regards as "home"), whereas it reports that over 131 employees performed work in Kentucky.

4224723, at *5 (N.D. Cal. Sept. 22, 2017); *see Bristol–Myers Squibb Co. v. Superior Court of Cal.*, 377 P.3d 874, 891 (Cal. 2016), *rev'd by Bristol–Myers*, 137 S. Ct. 1773. *"(T)his factor materially distinguishes this action from Bristol–Myers because in class actions, the citizenship of the unnamed plaintiffs is not taken into account for personal jurisdiction purposes." Fitzhenry–Russell*, 2017 WL 4224723, at *5 (citing *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 Fed.Appx. 587 (9th Cir. 2017)); *accord Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015). Justice Sotomayor recognized that the majority in *BMS* did not address whether the Supreme Court's opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Bristol–Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting).

Recently, a sister court in California faced a similar issue as the one before the court today: whether *BMS* alters existing personal jurisdiction jurisprudence in class actions created under Rule 23. *See generally Fitzhenry–Russell*, 2017 WL 4224723. The district court in *Fitzhenry–Russell* considered the difference between a mass tort action and a class action. *Id.* at *5. In a mass tort action, like the one in *BMS*, each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints. *Id.* A class action, on the other hand, generally involves one or more plaintiffs who seek to represent the rest of the similarly situated plaintiffs. *Id.* (citing Fed. R. Civ. P. 23).

In *Fitzhenry–Russell*, all of the named plaintiffs are California residents, and these named plaintiffs seek to represent a *nationwide* class of Ginger Ale purchasers, even though 88-percent of the class members are not California residents. *Id.* The court held that *BMS* did not extend its reasoning to bar the nonresident plaintiffs' claims in a federal nationwide class action, and *Bristol–Myers* is meaningfully distinguishable based on that case concerning a mass tort action. *See id.*; *but see McDonnell v. Nature's Way Products LLC*, 2017 WL 4864910, at *4 (N.D. Ill. October 26, 2017) (holding that the court lacked jurisdiction over claims brought on behalf of consumers whose claims arose in multiple other states). The *Fitzhenry–Russell* court concluded: *"Dr. Pepper has not presented the Court with persuasive argument—much less binding law—compelling the extension of Bristol–Myers to class actions." Id.* And neither have defendants here. (Emphasis added.)

While defendants believe that *Bristol-Myers Squibb Co.* should be applied to class actions, it fails to cite any binding authority for such proposition. At best, district courts

are inconsistent with interpretations regarding the issue.  However, a majority of district courts have explicitly rejected defendants' argument.

In a matter transferred to a Multidistrict Litigation (MDL) tribunal, the court *In Re Chinese-Manufactured Drywall Products Liability Litigation*, 2017 WL 5971622 (E.D. La. November 30, 2017), speaks extensively on the spirit of expansive federal jurisdiction for federal class action claims. The court first discussed "Federal Rule of Civil Procedure 23 as a permissible vehicle built by Congress to orderly deal with large numbers of similar cases across the nation." *Id.* at *17. Similarly, the court opined that "MDL cases are another example of this principle." *Id.* The court also noted that The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, despite the fact that diversity of citizenship for purposes of CAFA is primarily an issue of subject matter jurisdiction rather than personal jurisdiction, "CAFA illustrates that personal jurisdiction in federal court is permissible even when there are nonresident plaintiffs or class members whose claims arise from conduct outside the forum state." *Id.* at *18. "The reason for the class device is that a coherence of rights and claims already exists among potential class members, and it is the existence of those elements that makes the representative suit appropriate." *Id.* at *19. "*BMS* is not a change to controlling law regarding personal jurisdiction, class action, or agency relationship. Therefore, this court finds that revisiting these issues is not necessary." *Id.* at *22.

D.     THE PLAINTIFFS HAVE STANDING; THE DEFENDANTS' ARTICLE III ARGUMENTS ARE MERITLESS.

Defendants argue that the plaintiffs lack any connection or injury from states other than Kentucky; thus, they lack Article III standing to bring claims on behalf of the out-of-state putative class members.  As a preliminary matter, numerous courts have

held that Article III standing should not be addressed prior to resolution of class certification.  *See, e.g., Oritz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295 (1999), and *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231 (1997).

Defendants rely heavily upon *Lewis v. Casey,* 518 U.S. 343, 357 (1996) to support their position.   In *Lewis,* twenty-two inmates brought suit against a state department of corrections asserting violations of their constitutional rights to access the courts, counsel, and law libraries.  The Court found that only one of the named plaintiffs actually suffered an injury and that the single injury was inadequate to demonstrate that the problem was "widespread enough to justify systemwide relief."  Adopting the holding from *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, n. 20 (1976), "that a suit may be a class action . . .  adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent,'" the *Lewis* Court found that the named plaintiffs lacked Article III standing to pursue claims due to their lack of personal injury and could not rely solely on speculative injury of others. This is a far cry from the case currently before this Court.

In *Le v. Kohls Department Stores, Inc.,* 160 F.Supp.3d 1096 (E.D.Wis.2016), a consumer brought a class action under various state consumer protection laws for not only his home state, but forty other states that he was not injured in and had no other connection.   The *Le* court quoted *Arreola v. Godinez,* 546 F.3d 788 (7th Cir. 2008), which asserted "when deciding questions of standing, courts must look at the case as a whole, rather than picking apart its various components to separate the claims for which

the plaintiff will be entitled to relief from those for which he will not." *Id.* at 795.  The *Le* court further analyzed *Payton v. County of Kane,* 308 F.3d 673 (7th Cir. 2002), which provided "this question of 'standing' is just one part of a rather complex network of rules regulating class actions, under which the named plaintiff is the critical actor for some purposes, every individual member of the class is relevant for other purposes, and the class as a whole is the focal point for yet other purposes."  It was further noted that *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 377 (E.D.N.Y.2010), the court analyzed a series of authorities which all concluded named plaintiffs were permitted to bring class actions which invoked "sister state" consumer protection laws and that the named plaintiffs' standing was "immaterial" because they are seeking to represent other, similarly situated individuals in those states.   Finally, the *Le* court recognized that the Class Action Fairness Act has "authorize[d] federal judges to resolve, big-states, multi-state class actions." *Morrison v. YTB Int'l, Inc.,* 649 F.3d at 536.   Thus, *Le* Court held that the named plaintiff had standing to assert representative claims under state laws for forty other states.

In *Dragoslavic v. Ace Hardware Corporation,* 274 F.Supp.3d 578 (E.D.Tex.2017), a consumer sought to bring claims under the Texas Deceptive Trade Practices Consumer Protection Act and the laws of forty-four other states.   The defendant in *Dragoslavic* brought forth similar arguments that the named plaintiff lacked Article III standing to bring claims for putative class members who had no ties to Texas.   The Court held:

> Judge Easterbrook addressed a similar issue in *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011) and reached the same conclusion. In *Morrison*, plaintiffs sought to represent a class of consumers from multiple states in claims against an Illinois company under the Illinois

Consumer Fraud Act. 649 F.3d at 535. Defendants argued that putative class members from states other than Illinois lacked standing because they did not live in Illinois. *Id.* Judge Easterbrook reasoned that where the putative class members lived had nothing to do with standing because the "class members (no matter where they live) have an Article III controversy with [the defendant]." *Id.* at 536. He then explained that Article III demands a concrete injury traceable to the defendant that is redressable by a judicial decision and "[n]othing more." *Id.* This Court agrees.

The court also noted that *Le* held "like the out-state-plaintiffs in *Morrison*, the fact that [Plaintiff] does not live, nor was injured, in the [several] states under which his claim may arise is of no constitutional moment" and *In re: McCormick & Co., Inc.*, 217 F.Supp.3d 124, 144 (D.D.C. 2016), the court held that "it is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing."  As such, the *Dragoslavic c*ourt held:

> Ultimately, Defendant's reliance on Article III to attack whether Dragoslavic can or should represent putative class members from other states is misplaced. Said another way, standing is the wrong conceptual framework for this purpose. Dragoslavic has been injured and he seeks to bring claims on behalf of himself and others who have purportedly suffered a similar injury at the hands of the same defendant based on the same allegedly misleading statements. This clearly presents a case or controversy between Plaintiff, the putative class members, and Defendant (as in *Morrison*). Article III demands "[n]othing more." *Morrison*, 649 F.3d at 536.

In *Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Health Corporation,* 221 F.Supp.3d 227 (D.R.I.2016), the court also analyzed the issue of whether a plaintiff has standing to assert claims of a putative class where members resided and were injured out-of-state and relied upon, *inter alia, Solodyn, 2015 WL 5458570, at \*14* (deferring consideration of standing where "[a]ll members of the putative class have a common interest in litigating claims arising from the Defendants'

[conduct]" (citation omitted)); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367, 407 (D. Mass. 2013) ("This Court holds that the requisite 'identity of issues' and 'alignment of incentives' is present amongst the End–Payors here. All members of the putative class have a common interest in litigating claims arising from the defendants' allegedly anticompetitive collusion designed to cause the End–Payors to pay supracompetitive prices across the several states."); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004) (certifying class that did not have named plaintiffs from each state because "[t]he more traditional inquiry, which . . . would require class counsel to identify representatives from each state involved in a multistate class action, would render class actions considerably more cumbersome to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual rights and in 'achiev[ing] economies of time, effort, and expense.'" (quoting *Amchem*, 521 U.S. at 615)).  The court further noted that in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011), deferred the Article III standing analysis because the named plaintiffs have "essentially the same incentive to litigate the counterpart claims of the class members because the establishment of the named plaintiffs' claims necessarily establishes those of other class members."  The *Sheet Metal Workers* court also analyzed a case which opined:

> Courts have in the past found sufficient similarities between the laws of the various states to justify the prosecution of nationwide class action suits asserting state law claims. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 80 (E.D.N.Y.2004) (certifying nationwide class action brought under various state laws by single named plaintiff who suffered injury in only one state); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 58 (S.D.N.Y.1993); *In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991).

Thus, the *Sheet Metal Workers* court ultimately rejected Defendant's arguments that the named plaintiffs could not assert claims on behalf of the out-of-state putative class members.

IV.     CONCLUSION

The matter before the court is a textbook example of the purpose for and reason behind the class action mechanism. The case provides complete satisfaction to all the elements required for a court to certify a dispute as a class action.

The court should take judicial notice that AMC has already unsuccessfully litigated the exact issues raised in its instant motion.  Defendants seek a second attempt at the original motion to dismiss in lieu of following the court's scheduling order related to plaintiffs' motion for class certification.  This court should follow the case of the law doctrine and decline to revisit an issue already addressed by the court.  In the event that the court revisits the issue of personal jurisdiction, it should extend pendent personal jurisdiction for claims of out-of-state putative class members.  Judicial economy is served by allowing all putative class members to litigate this issue in one forum. The defendants cannot demonstrate any prejudice which would result from a single action. As such, the court should deny the defendants' motion for judgment on the pleadings.

RESPECTFULLY SUBMITTED,

/S/ CHARLES W. ARNOLD. ESQ.
ARNOLD & MILLER, PLC
Charles W. Arnold, Esq.
Christopher D. Miller, Esq.
401 West Main Street, Suite 303
Lexington, Kentucky 40507
Telephone: 859.381.9999
Facsimile: 859.389.6666
Email: carnold@arnoldmillerlaw.com
Email: cmiller@arnoldmillerlaw.com

and

COWAN LAW OFFICE, PLC
J. Robert Cowan, Esq.
Gerry L. Calvert, II, Esq.
H. Gera Meyman, Esq.
2401 Regency Road; Suite 300
Lexington, Kentucky 40503
Telephone: 859.523.8883
Facsimile: 859.523.8885
Email: kylaw@cowanlawky.com
Email: gcalvert@cowanlawky.com
Email: gmeyman@cowanlawky.com
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed and served upon all counsel of record through the Court's Case Management and Electronic Case Filing (CM/ECF) system on April 13, 2018.

/s/ Charles W. Arnold
Co-Counsel for plaintiffs