**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **LETCH G. DAY, et al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **NO. 5:17-CV-183-CHB-MAS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMC CORPORATION, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Letch G. Day's ("Day"), individually and on behalf of those similarly situated, unopposed Motion for Class Certification and Preliminary Approval of Class Action Settlement. [DE 105]. For the reasons stated herein, the Court recommends the District Court certify the class and preliminarily approve the settlement subject to the changes suggested herein.

## I.   BACKGROUND

A.   FACTUAL AND PROCEDURAL BACKGROUND

Day filed this action on behalf of both current and former flight paramedics and nurses employed by Defendants to this action (referred to collectively herein as "AMC"). AMC is an air ambulance company. Day alleges AMC had a practice of unlawfully deducting "sleep time" from employees' overtime pay. [DE 1-1 at Page ID # 16 (Complaint ¶¶ 25-30)]. As a result, Day and the putative class members ("Class Members") were not compensated for all hours, including sleep time, and worked in excess of forty (40) hours per week, in violation of the Kentucky Wage and Hour Act ("KWHA"). KRS 337.285.

1

Day filed this lawsuit in Fayette Circuit Court on March 22, 2017, and AMC removed to this Court based on diversity jurisdiction and the Class Action Fairness Act. [DE 1 and 4]; 28 U.S.C. § 1446; 28 U.S.C. § 1332(d). In ruling on Defendants' Motion to Dismiss [DE 4], the District Court held that air ambulance companies are not exempt from the KWHA and that Plaintiffs could proceed in a class action lawsuit under KWHA. [DE 11]. The result of that ruling is that AMC is at a great risk of being found liable for unpaid overtime, including unpaid "sleep time." Consequently, the parties in this case determined settlement discussions would be mutually beneficial in reaching a resolution of this matter. [DE 105-1 at Page ID # 1162].

Initially, efforts to settle this case were unsuccessful and both parties engaged in substantial discovery. [*Id*.]. The discovery included the deposition of the named plaintiffs and the production of payroll records. The payroll records were reviewed by a third-party data processing company and economics expert to validate Plaintiffs' methodology for estimating damages. [DE 105-1 at Page ID # 1163]. The parties renewed their attempt to settle the case, which was again unsuccessful. AMC began making settlement offers directly to employees who were members of the putative class. [*Id*.]. AMC admitted on the record that, but for this lawsuit, it would not have made settlement offers to these individuals. [DE 110, Recording at 9:45]. The individual, extra-judicial settlement offers resulted in payment to many putative class members, many of whom signed settlement releases. [DE 105-1 at Page ID # 1178]. The process for obtaining these settlement releases was as follows: AMC's human resources personnel reached out to current employees/putative class members and paid them the full amount of unpaid overtime allegedly due to them based on AMC's records.[1] Receipt of these payments did not require the putative

---

[1] These payments were calculated based on the applicable five-year statute of limitations in Kentucky.

2

class members to sign a release. These employees were then invited to sign a release in exchange for an additional payment for liquidated damages and interest, equal to 50% of the overtime backpay they already received. [DE 110, Recording at 7:56-8:42]. AMC followed a similar process for reaching out through the mail to former employees/putative class members to obtain settlement releases. [DE 110, Recording at 8:43-9:14]. There are 151 putative class members, of which 122 have signed settlement releases, 18 have been paid their overtime backpay but no liquidated damages and have not signed a release, and 11 have not received any amount.[2] [DE 105-2, Page ID # 1205].

For purposes of settlement, AMC does not oppose class certification. [DE 105]. AMC was clear at the status conference that it strongly preferred that this matter be settled through a class action lawsuit so that it may have assurance that after the settlement is effectuated it will not be subject to further claims against it in Kentucky for unpaid overtime for the relevant time period. Notwithstanding AMC's acquiesce to class certification, the Court will conduct a full analysis of the prerequisites for class certification under Rule 23(a) and (b) as well as the new requirements for preliminary settlement approval under 23(e).

**B.    SUMMARY OF PROPOSED SETTLEMENT**

The parties ultimately negotiated a "global" settlement (the "Settlement"). [DE 105 at Page ID # 1163-64]. The Settlement provides for a maximum Gross Settlement Fund of $5,026,204.31,

---

[2] The parties repeatedly assert that there are 123 signed settlement releases; however, based on Exhibit 1 attached to Plaintiff's Unopposed Motion for Class Certification and Preliminary Approval of Class Action Settlement [DE 105-2], there are 151 putative class members, of which 18 have been partially compensated and 11 have not received any amount, bringing the total of settlement releases to 122. The settlement agreements filed in the record at DE 109 also total 122. The parties conceded at the status conference on May 2, 2019, that the totals in the table at Ex. 1 [DE 105-2] are inaccurate and agreed to submit an updated table by May 17, 2019. No such table has been filed in the record. The Court's understanding is that the total Gross Settlement Fund of $5,026,204.31 remains accurate.

which includes up to $900,000 in attorneys' fees and costs and the payments already made to putative class members. [DE 105-2 at Page # 1192]. AMC will be given credit for the payments already made, and no additional payments will be made to the putative class members who already received their overtime backpay plus 50% more for liquidated damages and interest.

The proposed settlement class (the "Class") is defined as:

All persons currently or formerly employed by AMC in the Commonwealth of Kentucky as a clinic employees [*sic*] (i.e., nurse or paramedic) at any time during the Class Period, which is March 22, 2012 through preliminary approval.

[DE 105 at Page ID # 1165]. As noted above, AMC has produced records that Day has analyzed, and the parties agree that the class definition includes 151 current and former employees ("Class Members"). The settlement proposes that AMC pay the Gross Settlement Fund, less applicable credits for payments already made to the Class Members, into a settlement fund that will be distributed by a third-party administrator (the "Administrator"). The Administrator's fee will be paid by AMC in addition to the Gross Settlement Fund.

The Administrator will be responsible for reaching Class Members. The Settlement Agreement requires the Administrator to finalize and mail the Notice to Class Members (the "Notice") and Opt-out to each individual who is a member of the Class; maintain a static website where the Notice can be downloaded; and independently respond to the inquiries of class members regarding relevant procedures. [DE 105 at Page ID # 1166]. AMC will provide the list of Class Members from its records. The Administrator will attempt to locate a current address for any Class Member whose mail is returned as undeliverable and will re-send the Notice and Opt-out to such an address where possible. AMC will also provide the last known e-mail address and telephone number for the 29 Class Members who have not already accepted a full settlement payment from AMC. For Class Members who do not timely submit a request to opt-out of the action, their claims will be released and barred once the Settlement is final.

4

Plaintiff's Counsel will petition the Court for attorneys' fees and costs of up to $900,000, which is approximately 18% percent of the Gross Settlement Fund. Individual payments to Class Members not already compensated will be calculated based upon AMC's time and payroll records. Class Members will be (or have been) fully compensated for their unpaid overtime during the relevant time period, plus 50% for liquidated damages and interest. The individually calculated payments are set forth in Exhibit 1 to the proposed Settlement Agreement filed with Day's unopposed motion.[3] [DE 105-2 at Page ID # 1205].

## II.    STANDARD OF REVIEW

FED. R. CIV. P. 23 governs class action lawsuits. Subsection (e) was modified in December 2018 to require parties to submit additional information so that the Court may preliminarily approve a settlement prior to notice being sent to Class Members. Rule 23(e) now employs a two-step approval process that requires the court: (1) to approve the sending of notice to class members under subdivision (e)(1) and (2) to then hold a hearing and approve the proposed settlement under subdivision (e)(2). This two-step process applies even where, as here, the class has not been certified. In such a circumstance, the Advisory Committee noted that the "notice required under Rule 23(e)(1) then should also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class to be certified under Rule 23(b)(3), and trigger the class members' time to request exclusion. Information about the Opt-out rate could then be available to the court when it considers final approval of the proposed settlement." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

To effectuate this process, a court must "frontload" its analysis by considering many of the same factors at the initial notice stage that it will consider at the later approval stage. Consistent

---

[3] The parties stated that although the totals in Ex. 1 are inaccurate, the amount due to each Class Member is accurate.

with the new rule and as part of this first step, the Court will analyze whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." If both of those questions are answered in the affirmative, the Court will consider whether the proposed method of giving notice satisfies Rule 23(c)(2)(B).

### III.  ANALYSIS

#### A.  APPROVAL OF SETTLEMENT PURSUANT TO RULE 23(E)(2)

The amendments to Rule 23(e) set forth a list of specific factors and issues for courts to consider in deciding whether a settlement is "fair, reasonable, and adequate" such that courts may approve the sending of notice and the proposed settlement. Under this new rubric, the Court must examine four issues: (1) whether the proposed class was adequately represented; (2) whether the proposed settlement was reached through an arm's length negotiation; (3) the proposed relief to the class is adequate; and (4) whether the proposed settlement treats class members equitably. The Court will address each of these factors, in turn, below.

Moreover, the Advisory Committee made clear that "[t]he goal of this amendment is not to displace any factor [developed by the circuit courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). Accordingly, in addition to analyzing the new factors set forth in Rule 23(e)(2), the Court will analyze the relevant Sixth Circuit factors.

#### B.  RULE 23(E)(2) FACTORS

##### 1.  *Adequate Representation and Arm's Length Negotiation*

Regarding these first two factors, the Advisory Committee offered the following guidance:

These paragraphs identify matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement. . . .

6

> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). The Court, based upon the record, finds no dispute related to the representation and negotiations in this matter.

Namely, counsel for Day (and proposed lead class counsel) is an experienced class action litigator. The decision to settle the current dispute was made after significant discovery, an exhaustive review of payroll records and other information by counsel for both sides, and third-party experts hired by Plaintiffs.

Moreover, there is no evidence or concern about collusion. The settlement was reached after adversarial negotiations spanning many months. The parties, after reviewing the reports of the experts, taking depositions, and attempting mediation, reached a settlement that was based upon an arm's-length negotiation.

### 2.    *Adequate Relief*

Rule 23(e)(2)(C) requires the Court to review "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

First, the proposed settlement provides full and complete payment of the overtime due to each Class Member for the relevant time period. [DE 105 at Page ID # 1167]. While it is possible that the Class Members could recover more if this settlement is not approved, it is possible they

could recover less or nothing at all. "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D. N.Y. 2011). According to the parties, if this matter does not reach a settlement, AMC intends to litigate the Court's prior holding that the Airline Deregulation Act does not pre-empt the KWHA, an issue that the Sixth Circuit Court of Appeals has not yet addressed. [DE 105 at Page ID # 1178]. This unsettled legal issue presents significant risk for both parties, as a favorable ruling for AMC at the appeals court would vitiate Plaintiffs' claims. The parties further state that continued litigation will involve substantial discovery on whether AMC's actions were willful (a fact-intensive inquiry), dispositive motion practice, and a trial that could be costly. After the trial, the parties expect there would be a lengthy appeal period. [Id.]

Second, the parties agree that the Class Members will be notified by the Administrator via first class United States mail at the last known address of the Class Members as provided by AMC. The Administrator will attempt to confirm each Class Member's address through the United States Postal Service's change of address database. For any notices returned as undeliverable, the Administrator will perform a computerized skip trace search and re-send notices for those Class Members for whom a new address is found. Additionally, the parties propose that "after final approval of the Settlement after the final approval hearing, the completion of settlement administration, and within seven (7) days after the Court's final approval order becomes a final un-appealable order, and upon further order of the Court, the Settlement Administrator will mail Individual Settlement Payments to class members who have not opted-out and have not previously signed a settlement agreement and accepted a full settlement payment from AMC." [DE 105 at

Page ID # 1167]. The Court finds that these are reasonable actions that will ensure Class Members are notified, have the opportunity to Opt-out, and receive their funds if they have not already.

Third, Day's counsel seeks attorneys' fees and costs totaling $900,000, or approximately 18% of the total settlement funds. Pursuant to KRS 337.385, the employer is liable for attorneys' fees when the employer fails to provide the overtime compensation required by KRS 337.285. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). The proposed settlement in this matter will pay all Class Members his or her entire overtime wages owed; AMC has agreed to pay attorneys' fees in addition to the overtime wages owed. "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (quoting *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir.1999)). In this instance, the attorneys' fees are below the typical range. Thus, the Court finds the fee to be reasonable, particularly given the fact the fee will not reduce the amount the Class Members receive.

Finally, the Court must review any side agreements between the parties, outside of the Settlement. Paragraph 73 of the Settlement agreement asserts that the Settlement constitutes "the entire Settlement among these Parties, and no oral or written representation, warranties or inducements have been made to any Party concerning this Settlement or its exhibits other than the representations, warranties, and covenant contained and memorialized in this Settlement and its exhibits." [DE 105-2 at Page ID # 1201].

Of course, many of the Class Members have signed settlement releases related to their claims in this lawsuit. The Court has fully reviewed those releases, which are filed in the record

9

at DE 109.  Those agreements, however, are not agreements on behalf of the Class with AMC.

Thus, the Court finds those releases are not an "agreement made in connection with the proposal"

to settle this class action lawsuit.  FED. R. CIV. P. 23(e)(3).  Further, the Court recommends the

Class Members who have signed releases be treated identically to the Class Members who have

not signed releases.  *See* sections (d) and (f), *infra*.

### 3.    *Equitable Treatment*

The Court must determine whether the "proposal treats class members equitably relative

to each other."  FED. R. CIV. P. 23(e)(2)(D).  The Court finds that the proposed Settlement treats

all Class Members equitably.  Although there is great disparity between the amounts some Class

Members will receive, these amounts are based on the actual number of unpaid overtime hours

each Class Member worked during the relevant time period.  Thus, those Class Members that

worked more unpaid overtime hours will be compensated at a correspondingly higher amount;

likewise, from the information submitted it appears that the Class Members' rate of pay per hour

recoverable in this lawsuit may differ based on each individual's rate of pay at the time the Class

Member logged the unpaid overtime hours.  [*See* DE 105-2].  When interest is considered, those

Class Members that accepted full settlement in 2018 effectively received more money than those

who will receive possibly a year or slightly more later.  However, the Court finds that 50% of the

full overtime backpay is an amount that is a generous amount which equitably compensates each

Class Member and a time difference of approximately one year is not so great as to make a

significant difference between Class Members.  Further, 81% of Class Members were paid some

or all of their settlement in 2018, which means most Class Members were paid within a few months

of each other.

C.   SIXTH CIRCUIT FACTORS

Prior to the 2018 Amendments to Rule 23, the Sixth Circuit relied on its own set of factors to determine whether a proposed class action settlement should be approved:

> To determine whether a settlement agreement satisfies Rule 23's fairness standard, we consider: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).  These Sixth Circuit factors are somewhat duplicative of the new considerations set forth in Rule 23(e).   Nevertheless, the Advisory Committee specifically stated the goal of the 2018 amendment was "not to displace any factor [developed by the federal circuit courts]."  Advisory Committee Notes, 324 F.R.D. at 918.  In accordance with this directive and due to the dearth of any Sixth Circuit case law on the new Rule 23(e) provisions, the Court will briefly review each of the Sixth Circuit factors as well.

### 1.   Risk of Fraud or Collusion

As stated, there is no evidence in this matter that the parties colluded with one another, or that the settlement is the result of a fraud.  Although Day's lawyer stands to collect a substantial fee, it is not unusual for the class counsel to obtain a fee around 25% (or more), even when that results in a fee that is six figures (or more).  *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (noting that attorney's fees are usually between 20% and 30% of the class fund).

### 2.   The complexity, expense and likely duration of the litigation

The parties estimate this litigation would be lengthy and expensive for all parties involved. The parties stated:

If this Settlement is not approved, the Parties face an extended and costly battle with additional expensive discovery (including expert discovery), motions for summary judgment, renewed motions for decertification, trial preparation and trial that would likely be lengthy and costly.

Further, if the Parties do not settle the Plaintiffs' claims, it would likely take several years (in addition to the almost two years the case has been pending) and additional legal fees before reaching final resolution of those claims, including exhaustion of all appeals.

[DE 105 at Page ID #1178]. The Court finds that the parties' concerns about the length and cost of litigation are warranted. The Sixth Circuit has not addressed this court's ruling that the KWHA applies to air ambulance employees' sleep time. This case will likely require additional discovery sufficient to support dispositive motions, and, if those do not resolve the case, the case would likely proceed to trial. Either way, the parties expect to appeal the outcome. The entire process would likely take several years to reach a final resolution. Thus, early resolution is likely beneficial to the Class Members and AMC.

### 3.    *The amount of discovery engaged in by the parties*

The parties have engaged in substantial discovery to date. "Defendants produced, and Plaintiffs analyzed, over 29,416 pages of documents, including payroll and time records for 151 Kentucky employees. All five named Plaintiffs were deposed, along with three of Defendants' employees." [DE 105 at Page ID # 1163]. Due to the expected expense of discovery, the parties agreed to pursue settlement prior to engaging additional discovery. [DE 105 at Page ID #1163]. Although proceeding to a settlement agreement "without expert opinions or formal discovery . . . the class counsel could not have entered into the settlement negotiations with much more than an uneducated guess as to the merits of the case and the propriety and fair value of a settlement[,]" in this case the Court's concerns are assuaged by the fact that there has been some fact discovery, there is little dispute between the parties as to the value of each putative Class Member's actual damages, and AMC proposes paying those damages in full. *Olden v. Gardner*, 294 Fed. App'x

210, 218, 2008 WL 4297245, at *7 (6th Cir. 2008). It appears that additional discovery would, therefore, focus on the legal arguments, consequential damages, and AMC's alleged willfulness. The Court believes the discovery most pertinent to the value of the Settlement is that related to the amount of actual damages, which the parties have already undertaken.

### 4.   *The Likelihood of Success on the Merits*

The Court "cannot evaluate a settlement's fairness without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' . . . In fact, this is the most important of the seven factors that we are supposed to consider in reviewing the fairness of a settlement." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 723 (6th Cir. 2013) (internal quotation marks and citations omitted) (dissent).

The District Court held that air ambulance companies, such as AMC, were not exempt from the KWHA by virtue of the Airline Deregulation Act. [DE 11]. Although there remains uncertainty in the law because the Sixth Circuit has not addressed this issue nor the good faith defense to the claim that AMC intends to raise, it appears that Day is likely to prevail on the legal arguments at trial. If he was to prevail on the legal arguments, it appears there is little factual dispute between the parties that there were employees who were not paid for "sleep time." Accordingly, Day has established a likelihood of success on the merits.

### 5.   *The Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010). Plaintiffs assert that "[t]he parties desire to avoid these risks and uncertainties, as well as the loss of time and resources, and thus, determined that a settlement pursuant to the terms and conditions of the tendered Settlement Agreement would be more

13

beneficial than continued litigation. Plaintiffs' counsel believes the terms of the Settlement Agreement are in the best interests of the class and are fair, reasonable, and adequate." [DE 105 at Page ID # 1164]. Having previously found no collusion or reason to suspect fraud in the Settlement, the Court defers to this reasoned assessment of Day's counsel as to the benefit of settlement in this matter.

### 6.      The Reaction of Absent Class Members

Because the parties have reached a proposed settlement in the early stages of this litigation, and the Court is reviewing this issue at the preliminary, pre-notice stage, the reaction of absent class members is impossible to know at this time. The parties note, however, that many of the Class Members did not know that they had a claim for unpaid overtime until the named plaintiff filed this action and/or AMC approached them about settlement. [DE 105 at Page ID #1175]. These individuals have or will receive full compensation for those hours previously unpaid. The fact that 122 Class Members out of 151 total have accepted payment amount from AMC under the same terms as proposed herein, and willingly signed a release, indicates the Class Members desire their claims be resolved in the manner proposed in the Settlement. If the settlement is approved, the Administrator will make several efforts, described herein, to notify class members and alert them to the Opt-out provisions. Class Members, including those who have already received payments, will have the opportunity to come and object. The Class is only 151 individuals, all of whom are known to AMC (unlike a large products case, where thousands or millions of people may have purchased a product and the defendant has no way of knowing who they are with certainty). The Court expects that the vast majority of Class Members will receive notice and the Opt-out form. Any objections to the settlement can be addressed at the final approval hearing.

*7.    Public Interest*

The public interest in assuring employees receive all the pay they are statutorily entitled to is served in this case because AMC has changed its practices regarding "sleep time" and overtime pay. "Likewise, there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted).

**C.    CLASS CERTIFICATION**

The 2018 Amendments to Rule 23(e) require a court to determine whether it "will likely be able to: . . . certify the class for purposes of judgment on the propos[ed settlement]." FED. R. CIV. P. 23(e)(1)(B)(ii). A Court may authorize distribution of the settlement notice only where it determines class certification is likely (and approval of the settlement pursuant to Rule 23(e)(2) and Circuit law is also likely, as determined *supra*). Thus, the Court will review the likelihood of class certification under subsections (a) and (b) of Rule 23.

*1.    Rule 23(a) Factors*

Rule 23(a) sets forth the prerequisites a named plaintiff must satisfy for class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). AMC concedes, and the Court agrees, that the 151 members of the putative class easily meets the numerosity requirements. The Sixth Circuit has "observed that [t]here is no

15

strict numerical test for determining impracticability of joinder. . . . Nevertheless, while the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (internal citations and quotation marks omitted). The 151 identified class members is not speculative, but a concrete number derived from Defendant's employment records. Joinder of 151 individuals to this lawsuit would be so cumbersome as to render it impractical.

AMC further concedes that all the putative Class Members, including Day, were subjected to the same overtime policy, satisfying both commonality and typicality. AMC readily admits that it deducted "sleep time" from employees' overtime calculations. "The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). In fact, there is only one question in this matter to be answered: should AMC have paid the putative Class Members for overtime during the hours they were sleeping during their shifts? Because there is just one question presented in this case, Day—similarly situated as all other Class Members who were not paid for their sleep time—represents a typical claim in this matter. *See General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980) ("The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims."). Thus, the commonality and typicality requirements are both met.

Regarding the fourth 23(a) factor, the Sixth Circuit set forth a two-part test to aid Courts in determining whether the named plaintiff will fairly and adequately protect the interests of the class: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through

qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). As discussed above, Day has a claim typical of all 151 putative Class Members. There is nothing in the record to suggest his interests might be antagonistic to the unnamed Class Members. If the class is certified and the settlement approved, 58 Class Members have received or will receive greater recoveries than Day's $29,934.69.[4] [DE 105-2 at Page ID # 1205-1208]. and DE 20-2 at Page ID 152-61]. The second requirement is also met. To date, Day has pursued this matter through experienced and qualified counsel who are not only litigating this matter, but another, companion case in this Court. *See Peck, et al. v. Air Evac EMS, Inc., et al.*, 5:18-CV-615-DCR-MAS (E.D. Ky.).

The question presented herein is whether the individuals who have signed a release are precluded from inclusion in the class. There are three categories of Class Members in the Class: those who have not received any sum to date, those who have received payments and signed releases, and those who have received payments but have not signed releases. The Court finds there is no real distinction between each of these categories of Class Members, other than when they have been or will be paid. Whether or not certain Class Members signed a release does not change the claim they have against AMC, because a release is an affirmative defense pursuant to FED. R. CIV. P. 8(c). The Court has made no finding as to whether the releases in the record are valid and binding; regardless, AMC stated it is waiving the release defense for the purpose of effectuating this settlement. [DE 112 at Page ID # 1491]. All of the Class Members, whether they have signed a release or not, have the same claim of unpaid overtime; all of the Class Members'

---

[4]  The other four named Plaintiffs have received or will receive amounts less than the amount Day will receive. The parties did not state whether any of the named Plaintiffs will receive an incentive bonus payment; however, even if a modest incentive payment is included, the named Plaintiffs will likely recover much less than many of the Class Members, 30 of whom have or will recover more than $50,000.

recovery has been calculated by determining the amount of unpaid overtime due, plus 50% for liquated damages, minus any payments AMC already made to that person. Every single Class Member's compensation will be determined using this formula. Every single Class Member, whether they have signed a release or not, will receive the same opportunity to object to the settlement at the final hearing or to opt-out of the settlement.

Sixth Circuit case law supports this conclusion. In *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997), the Court rejected the defendant's argument that the releases two-thirds of the putative class signed defeated typicality. Instead, the Sixth Circuit found that because the plaintiffs' evidence followed a pattern, involved the same people, and that the named plaintiff's claims were the same as every other class member, the fact that "plaintiffs' claims would be subject to varied defenses[]" did not preclude class certification. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997); *accord Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Thus, the Court finds that including all the Class Members who have already signed releases is appropriate pursuant to Rule 23(a)(3) and Sixth Circuit case law.

For the reasons stated above, the Court finds the requirements of Rule 23(a) are met in this case.

**D.     RULE 23(B) DESCRIPTORS**

Once a Court has determined the requirements of Rule 23(a) have been met, the Court must determine whether the proposed class action satisfied one of the types of cases outlined in subsection (b). Here, the parties moved for certification pursuant to FED. R. CIV. P. 23(b)(3), which states:

(b) A class action may be maintained if Rule 23(a) is satisfied and if:

18

. . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

      (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

      (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3). There is no dispute that the putative Class Members are united by a common question of law: whether they should have been paid for overtime during which they were sleeping.

If Class Members are forced to proceed individually, some Class Members will likely be foreclosed from any recovery at all. Indeed, according to the chart of potential payments, approximately 14 putative class members—nearly 10% of the putative class—have claims for actual damages of less than $1,000. Such a low claim makes it impractical and unlikely any of these individuals will be able to retain a lawyer and pursue their backpay in court. This is even more true when the Court considers that the Sixth Circuit has not ruled on the law in this area. Thus, these putative Class Members would face legal risk, litigation expense, and very little payout. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.")

Maintaining this lawsuit as a class action, on the other hand, will streamline this litigation exponentially. The question of law implicated in each putative class member's case is identical;

the only difference in their claims is the amount of overtime pay allegedly due to them.  The proposed settlement will pay each putative Class Member the full amount of unpaid overtime allegedly due to them; thus, although the amount each Class Member will receive will differ, each will be made whole based on their individual situation.

**D.**    **NOTICE PLAN**

The parties attached their proposed Notice and Opt-out form to the Motion for Class Certification and Preliminary Approval.  [DE 20-2 at Page ID 163-70].  As discussed *supra*, the Administrator will use several means to discover current addresses for putative class members and will re-send the Notice and Opt-out to Class Members where possible if the original is returned undeliverable.  The Administrator will also develop a website where the Class Members can download the Notice and Opt-out forms.

Rule 23(c)(2)(b) requires the Court to

(B) For (b)(3) Classes. For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.  The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B). The Court has reviewed the parties' proposed Notice and determined it satisfies the requirements of Rule 23(c)(2)(B) and it is in plain, easily understandable language. The Court further finds that First Class United States Postal Mail is the most practical method of providing notice under the circumstances. *See Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (upholding a settlement even where 20% of the class members did not receive notice until after the objection period had run because the extensive notice scheme the case "was 'reasonably calculated to reach interested parties'") (*citing Karkouli's Inc. v. Donhany*, 409 F.3d 279, 282 (6th Cir. 2005)). AMC has a mailing address for each of the putative Class Members, many of whom are current employees. The Court finds the requirements of Rule 23(c) are met by the proposed Notice plan except for the section discussed below.

Under the Notice's section titled "WHAT ARE YOUR OPTIONS?" the Notice informs Class Members that they may (1) do nothing, (2) opt-out, or (3) object to the settlement. However, Option 2 states, in bold underline:

> **If you have not already signed a settlement agreement and previously accepted a full settlement payment from AMC (i.e. if the "Total Due" as described above is something other than $0),** you have a right to exclude yourself ("opt-out") from the Settlement.

[DE 105-2 at Page ID # 1214]. The Court finds that the bold and underlined portion of that sentence should be struck from the Notice. The parties essentially suggest that the releases have no effect on class certification yet preclude Class Members who have released from opting out of the Settlement. This have-your-cake-and-eat-it-too approach essentially bounds Class Members who have signed a release to the terms of the release and bounds them to the terms of the class Settlement. These Class Members would be able to object to the settlement but would not be able to opt-out of the lawsuit and test the enforceability of the release. Were the Court to permit this Notice, it would be almost meaningless to 122 of the 151 Class Members. The only reason to

include the 122 Class Members who have signed releases, then, would be to inflate the Gross Settlement Fund. The parties have vehemently insisted the Class Members who have signed releases will be treated no differently from those who did not; thus, the Court finds this sentence of the Notice must be struck. The Court understands a Notice without such language does not provide AMC the "finality" it desires by settling with a class; however, there would always be the potential for some Class Members to opt-out.

Finally, the Court notes the Notice does not direct the Class Members to the static website where they can download the pertinent documents and update their contact information as set forth in the Settlement. The Notice should be updated to include the web address where Class Members will find this information.

### IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** the District Court find as follows:

- That the Court will likely be able to approve the Settlement Agreement on behalf of all current and former flight nurses and flight paramedics employed by AMC in the Commonwealth of Kentucky at any time from March 22, 2012, through the date the District Court enters an Order of preliminary approval;

- That the Court will likely be able to certify the proposed Class for the purposes of judgment on the proposed Settlement Agreement only;

- The District Court approve the proposed Notice and Opt-out forms set forth in DE 105-2 with the changes noted herein;

- The District Court approve a website and First Class United States Postal Mail as means of distributing notice to the Class Members, to be disseminated within 60 days of the entry of the Order of preliminary approval; and

- A Final Approval Hearing shall be held before the District Court at the discretion of the District Court with the District Court to establish any and all necessary interim deadlines as described in FED. R. CIV. P. 23.

Pursuant to FED. R. CIV. P. 42 and 28 U.S.C. § 363(b) and (c), the parties shall file objections to this Report and Recommendation within fourteen days from the date of entry of the same.

Entered this 26th day of July, 2019.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge